**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PROMINENT GMBH, *et al.*,          )
                                   )
               Plaintiffs,         )          CIVIL ACTION NO. 2:16-cv-01609-LPL
                                   )
     vs.                           )          The Honorable Lisa Pupo Lenihan
                                   )
PROMINENT SYSTEMS, INC., *et al.*, )
                                   )
               Defendants.         )


<u>PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE
COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(3) AND TO TRANSFER PURSUANT
TO 28 U.S.C. §§ 1404, 1406 AND 1631</u>

Table of Contents

I.   SUMMARY OF THE CASE ...................................................................................... 1

II.   SUMMARY OF ARGUMENT ................................................................................. 2

III.   ARGUMENT ......................................................................................................... 2

A.   Prominent Systems' Motions are Untimely ............................................................ 2

B.   FOUNDATIONAL ISSUES ..................................................................................... 3

1.   Defendants' General Denials Are Insufficient ..................................................... 3

2.   Defendants Concede Personal Jurisdiction Concerning.................................... 4

Prominent Systems, Inc. ............................................................................................. 4

3.   Defendant Prominent Supplies, Inc. is the Alter Ego of ................................... 5

Defendant Prominent Systems, Inc. .......................................................................... 5

4.   The Corporate Shield Doctrine is Inapplicable to Defendant ............................ 7

Ky Tran ........................................................................................................................ 7

5.   Plaintiffs did not Fail to Meet and Confer ........................................................... 9

C.   THE COMMONWEALTH OF PENNSYLVANIA HAS PERSONAL JURISDICTION
OVER DEFENDANTS .................................................................................................. 9

1.   Applicable Standard and Burdens ...................................................................... 10

2.   Personal Jurisdiction in this Commonwealth Exists When............................... 11

Applying the 3rd Circuit's Traditional Test ............................................................. 11

(a)   Defendants Purposefully Directed Their Activities at ................................... 11

This Forum ................................................................................................................ 11

i.   Defendants use Pennsylvania's PennBid Bidding System to Expressly Aim Their Willful
Trademark Infringement at Consumers in this Commonwealth ................................ 11

ii.   Defendants Operate an Interactive Website ....................................................... 12

iii.   Defendants Individually Target Hundreds of .................................................... 15

Pennsylvania Consumers at Tradeshows.................................................................. 15

iv.   Defendants are set to Take Their Trademark ..................................................... 16

Infringing Activities to this Commonwealth as a ...................................................... 16

Tradeshow Exhibitor ................................................................................................. 16

(b)   This Action Arises out of or Relates to These Activities................................. 17

(c)   The Exercise of Jurisdiction Comports with Fair Play................................... 19

and Substantial Justice............................................................................................. 19

3.    Defendants Trademark Infringing Activities Outside This Commonwealth Harm Plaintiffs Inside This Commonwealth...........................................................................................25

4.    This Court Also has Personal Jurisdiction Under the Calder Effects Test............................26

D.    Venue in this Court is Proper Under 28 U.S.C. § 1391 ........................................................27

E.    DEFENDANTS FAIL TO MEET THEIR BURDEN TO SHOW THAT TRANSFER IS APPROPRIATE ..............................................................................................................28

IV.    CONCLUSION ..............................................................................................................34

# TABLE OF AUTHORITIES

## CASES

*Acteon, Inc. v. Vista Dental Prod.*, No. CIV.A.05-3847(JEI), 2006 WL 1207999, at *4 (D.N.J. May 3, 2006) ................................................................................................................................8

*Aerolink Int'l v. Colonial Parking*, No. 96-1130, 1996 U.S. Dist. LEXIS 12430, at *9 (E.D. Pa. Aug. 21, 1996) ..........................................................................................................................24

*Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114 (1987) ......................................19

*Automated Med. Prods. Corp. v. Int'l Hosp. Supply Corp.*, (CIVIL ACTION NO. 97-2328, 1998 U.S. Dist. LEXIS 1231, at *13-14 (E.D. Pa. Jan. 29, 1998) ......................................................12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ................................................passim

*Burger King*, 471 U.S. at 478 ......................................................................................................20

*Burt v. Niagara Mach. & Tool Works*, 301 F. Supp. 899, 901 (W.D. Pa. 1969) .........................16

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 ...........................................................................27

*Carty v. Mason*, 2010 WL 7371954, at *3 (V.I. Super. May 6, 2010) ............................................3

*Clemens v. Gerber Sci. Inc.*, No. CIV.A. 87-5949, 1989 WL 3480, at *6 (E.D. Pa. Jan. 13, 1989) ...................................................................................................................................................6

*Cohen, Seglias, Greenhall, Pallas, & Furman, P.C. v. Hessert Const .--PA, LLC*, No. CIV.A. 10-6183, 2011 WL 382571, at *7 (E.D. Pa. Feb. 4, 2011) ..................................................................4

*De La Fuente v. I.C.C.*, 451 F.Supp. 867, 872, fn. 4 (N.D. Ill.) ....................................................15

*Deninno v. Municipality of Penn Hills*, 2007 WL 316392, at *12 (W.D. Pa. Jan. 31, 2007), aff'd, 269 Fed.Appx. 153 (3d Cir. 2008) ................................................................................................3

*DermaMed, Inc. v. Spa de Soleil, Inc.*, 152 F. Supp. 2d 780, 782 (E.D. Pa. 2001).....................28

*Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984) .........................11

*Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) ..................................................8

*Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992) ...............................................8

*Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 585 (E.D. Pa. 2005) .......24, 28

*Enter. Rent-A-Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co.*, 735 F. Supp. 2d 277 (W.D. Pa. 2010) ................................................................................................................6

*Farkas v. Rich Coast Corp.*, No. 2:13-CV-00926-LPL, 2014 WL 550594, at *25 (W.D. Pa. Feb. 11, 2014) ......................................................................................................................................29

*Farouk Sys., Inc. v. AG Glob. Prod.*, LLC, No. CV H-15-0465, 2015 WL 12778401, at *3 (S.D. Tex. June 22, 2015) ......................................................................................................................17

*Food Scis. Corp. v. Nagler*, No. CIV.09-1798 (JBS), 2010 WL 1186203, at *5 (D.N.J. Mar. 22, 2010).........................................................................................................................................22, 30

*Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 401 (M.D. Pa. 2013).......................................23, 24

*Gilliland v. Hurley,* No. CIV.A 09-1621, 2010 WL 830968, at *3 (W.D. Pa. Mar. 4, 2010).........4

*Grand Entm't Group, Ltd., v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3rd Cir.1993).............19

*Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir.1994) .....................................10

*Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 418 n.13 (U.S. 1984) .................17

*Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868 ...........................................................................10

*Horne v. Adolph Coors Co.*, 684 F.2d 255, 258 (3d Cir. 1982) .............................................11, 24

*IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998)* ............................................27

*In re Chocolate Confectionary Antitrust Litig.* (674 F. Supp. 2d 580, 598 (M.D. Pa. 2009).........6

*In re Volkswagen of America, Inc.*, 506 F.3d at 386 (5th Cir. 2007) ...........................................30

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir.1995)..................................................29

*Licciardello v. Lovelady*, 544 F.3d 1280, 88 U.S.P.Q.2d 1469 (11th Cir. 2008).........................15

*Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1244, fn. 5 (11th Cir. 2011) ............................15

*LTM Corp. v. Edward M. Livingston & Sons, Inc.*, 339 F. Supp. 1270, 1271 (E.D. Pa. 1972) ....16

*Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 805–806 (3rd Cir.1981) ........................6

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)..................................................................27

*McMullen v. European Adoption Consultants, Inc.*, 129 F. Supp. 2d 805, 809 (W.D. Pa. 2001) 11

*Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 785 (E.D. Pa. 2012)................................................................................................................................28

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004)..........................................passim

*Moore v. Little Giant Indus., Inc.*, 513 F. Supp. 1043, 1049 (D. Del. 1981), aff'd, 681 F.2d 807 (3d Cir. 1982) .....................................................................................................................16

*Myers v. American Dental Association*, 695 F.2d 716, 722 (3d Cir.1982) .............................8, 27

*N.L.R.B. v. Campbell Products Dept., Harry T. Campbell Sons Co., Div. of Flintkote Co.*, 623 F.2d 876 (3d Cir. 1980) ........................................................................................................2

*Nat'l Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.*, 785 F. Supp. 1186, 1194–95 (W.D. Pa. 1992).....................................................................................................................................5

*Navajo Nation v. Urban Outfitters, Inc.*, 918 F.Supp.2d 1245, 1256 (Dist. N.M. 2013).............17

*Newtechbio, Inc. v. Septicleanse, Inc.*, No. CIV.A. 12-5882 TJB, 2013 WL 3271001, at *5 (D.N.J. June 27, 2013).....................................................................................................24, 31

*Nutrimost, LLC v. Werfel*, No. 2:15CV531, 2016 WL 5107730, at *5 (W.D. Pa. Mar. 2, 2016) 10, 17

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) .....................10, 11, 19, 23

*Paolino v. Channel Home Centers*, 668 F.2d 721, 724 (3d Cir. 1981) .........................................11

*Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1370 (Fed. Cir. 2010)..................................................................................................................17, 23, 31

*Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998)..................10, 19

*Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir.1973).................................................29

*Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, 2009 WL 5184350, at *2 (D.Del. Dec.23, 2009).....................................................................................................................................4

*R.Q.C. Ltd., v. JKM Enterprises, Inc.*, No. 1:13-CV-307, 2014 WL 4792148, at *7 (W.D. Pa. Sept. 23, 2014)......................................................................................8, 19, 20, 24

*Renner v. Roundo AB*, No. 1:08-CV-209, 2010 WL 3906242, at *3 (W.D. Pa. Sept. 29, 2010)..11

*Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 672 (D. Del. 2014) .................4, 17

Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 303-05, 788 A.2d 268 (2002) ...............................8

*Samsung SDICo., Ltd. v. Matsushita Elec. Indus. Co.*, 524 F.Supp.2d 628, 631 (W.D.Pa.2006)28

*Savin Corp. v. Heritage Copy Products, Inc.*, 661 F.Supp. 463 (M.D. Pa. 1987) ..........................6

*Schwilm v. Holbrook*, 661 F.2d 12, 15 (3d Cir. 1981) ................................................................11

*Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).....................................................31

*Southco, Inc. v. Matdan Am. Corp.*, No. 98-5425, 1998 U.S. Dist. LEXIS 19416, at *20 (E.D. Pa. Dec. 8, 1998) .......................................................................................................................19

*Square D Co. v. Scott Elec. Co.*, No. CIV.A. 06-00459, 2008 WL 4877990, at *2 (W.D. Pa. Nov. 12, 2008)...............................................................................................8, 14, 18, 24

*Sullick v. United Pet Grp., Inc.*, No. CIV.A. 14-2950, 2015 WL 3643988, at *6 (E.D. Pa. June 12, 2015)...............................................................................................................................18

*Telebrands Corp. v. Mopnado,* No. CV21407969JLLJAD, 2016 WL 368166, at *1 (D.N.J. Jan. 12, 2016), report and recommendation adopted, No. CV147969JLLJAD, 2016 WL 355072 (D.N.J. Jan. 28, 2016)....................................................................................22, 23, 24

*Thompson v. Wyrks Tool & Mach. Ltd.*, No. 09-581, 2009 U.S. Dist. LEXIS 117479, at *5 (W.D. Pa. Nov. 13, 2009).........................................................................................................11

*Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)....................................10, 12

*Ty, Inc. v. Baby Me, Inc.*, 64 U.S.P.Q.2d 1442, 2001 WL 34043540 (N.D. Ill. 2001) .................15

*Watson v. Blessey Marine Servs.*, No. 11-cv-1252, 2011 U.S. Dist. LEXIS 135181, at *8 (W.D. Pa. Nov. 23, 2011)......................................................................................................10

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)......................................17

*Xcentric Ventures, LLC v. Arden*, No. C 10-80058 (SI), 2010 WL 2560484, at *4 (N.D. Cal. June 22, 2010)......................................................................................................................14

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)..............12, 22

## STATUTES

28 U.S.C. § 1391 ...................................................................................................2, 27, 28

42 Pa. Cons. Stat. § 5322(b)...........................................................................................11

42 Pa. Cons.Stat. Ann. 5322(a)(4)....................................................................................10

Fed. R. Civ. P. 12 ........................................................................................................27

## OTHER AUTHORITIES

Brief In Support of Motion to Dismiss.........................................................................4, 5, 26, 27

Brief in Support of Motion to Transfer ...............................................................................22, 26

Complaint ...........................................................................................................passim

Plaintiffs Prominent GmbH, Prominent Systems spol. s r.o., and Prominent Fluid Controls, Inc. ("Plaintiffs" or "Prominent"), by and through their undersigned attorney for this matter, hereby oppose Defendants' ("Defendants" or "Prominent Systems") Motion to Dismiss and Motion Transfer.[1]

## I.      SUMMARY OF THE CASE

This is a case of willful, intentional, and direct trademark infringement. Defendants, a national commercial operation with four regional entities including a "Central and Eastern Division" decided to misappropriate Plaintiffs well known and famous, registered PROMINENT trademarks with full knowledge of Prominent's better rights. Not only were Defendants asked to cease and desist their infringing activities in writing but in person by Plaintiff's General Manager.

Defendants' infringement is nationwide in scope and occurs via Defendants' aggressive scheme of bidding on government contracts including through Pennsylvania's PennBid system, through tradeshow attendances including in this Commonwealth as well as through a highly sophisticated national on- and offline marketing campaign.

If Defendants are not stopped in their tracks, Plaintiffs' successful family owned and operated business is at risk. This business has been loyal to its Pittsburgh base for more than 30 years, currently counts over 130 employees in Pittsburgh alone and defies all odds that successful manufacturing in the US is no longer possible.

///

---

[1] Defendants filed their Motions to Dismiss and Transfer separately. Thus Plaintiffs would have been entitled to file two Oppositions each 25 pages in length. For the convenience of the Court and the sake of efficiency, Plaintiffs submit one combined brief.

## II.      SUMMARY OF ARGUMENT

Defendants shoot at the wrong target when arguing that there exists no general personal jurisdiction in this case (Defendants' Declarations concern only general personal jurisdiction). Plaintiffs agree which is why the Complaint concentrates on specific personal jurisdiction. Personal jurisdiction in this case is focused heavily on Defendants' express aiming or individualized targeting. Defendants' Memorandum makes no mention of any of the applicable Third Circuit law. In fact, Defendants only cite two Third Circuit cases (referenced in a footnote), neither of which deals with the substantive issues at bar, and one District Court case from this Circuit.

When the Court applies Third Circuit law to the pleaded facts, it should be clear that Plaintiffs met their burden pleading a *prima facie* case of specific personal jurisdiction and that Defendants failed to present a "compelling case" that exercising jurisdiction in this Commonwealth would be unreasonable. Venue is simply proper under 28 U.S.C. § 1391 (b)(1) and (c). As far as Defendants' Motion to Transfer is concerned, Defendants' do not even mention the applicable test. Hence, the respective motion is properly denied as well.

## III.     ARGUMENT

### A.      Prominent Systems' Motions are Untimely

As per the parties 11/09/2016 stipulation (ECF No. 8), Prominent Systems' responsive pleading was due on Friday, 12/02/2016. However its Motions to Dismiss and Transfer were not filed until Tuesday, 12/06/2016 (ECF Nos. 21 - 24).

As the Third Circuit held in *N.L.R.B. v. Campbell Products Dept., Harry T. Campbell Sons Co., Div. of Flintkote Co.*, 623 F.2d 876 (3d Cir. 1980): "We recognize that rules requiring strict compliance with deadlines for raising issues or defenses are not only useful but, indeed,

essential for adjudicative bodies. Courts employ such rules as a matter of course. The cases are legion in which a variety of valid defenses, such as a lack of personal jurisdiction … are deemed waived when a party fails to plead or present them at the proper time."

What is more troubling is that Defendants neither requested an extension of time nor moved for an enlargement, thus leaving the Court and Plaintiffs in the dark as to the reasons for their delay. Given the relative brevity of this delay, Plaintiffs would likely have consented to such a motion but absent a respective request are left noting that "[Defendants'] complete failure to request even one enlargement demonstrates a disdain for the rules and for the orders of the Court." *Carty v. Mason*, 2010 WL 7371954, at *3 (V.I. Super. May 6, 2010)

Defendants also sit in a glass house when suggesting Rule 11 Sanctions (ECF 22 at 5, 8, ECF 24 at 10). *Deninno v. Municipality of Penn Hills*, 2007 WL 316392, at *12 (W.D. Pa. Jan. 31, 2007), aff'd, 269 Fed.Appx. 153 (3d Cir. 2008) ("Plaintiff's responses to these motions do not set forth good cause for the dilatory conduct and untimely filings, or for the failure to request leave of Court to enlarge the time for filing or for compliance with discovery requests. The Court observes that these motions raise substantial claims of delay and dilatory conduct that would appear to call for serious sanctions … .").

Plaintiffs respectfully submit that Defendants' Motions could be dismissed for their untimeliness alone.

### B.   FOUNDATIONAL ISSUES

#### 1.   Defendants' General Denials Are Insufficient

With reference only to a Ninth Circuit case, Defendants argue "[t]he court cannot assume the truth of allegations in a pleading that are contradicted by a sworn affidavit." (ECF No. 22 at 4) Although this is likely a non-issue since Defendants submitted declarations, not sworn

affidavits, "[o]n a motion to dismiss for lack of personal jurisdiction, 'the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor.' *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004)", *Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 672 (D. Del. 2014).

Additionally, Defendants' declarations contain mostly conclusions of law and to the extent factual statements are made, as in *Cohen, Seglias, Greenhall, Pallas, & Furman, P.C. v. Hessert Const .--PA, LLC*, No. CIV.A. 10-6183, 2011 WL 382571, at *7 (E.D. Pa. Feb. 4, 2011), these statements "correspond to general jurisdiction arguments. … Because [Plaintiffs have] conceded [they are] pursuing only a specific jurisdiction theory, these declarations are immaterial to the Court's analysis."

Aside from these immaterial declarations, Defendants' briefs contain a general denial of "each and every one of Plaintiff's allegations." (sic!) (ECF No. 22 at 3, ECF No. 24 at 2) Such a general denial is insufficient. In fact, this Court held that even specific denials set forth in a brief do not suffice. "The only place where Defendants deny that the telephone calls took place is in their brief … . This is insufficient. *See Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, 2009 WL 5184350, at *2 (D.Del. Dec.23, 2009) ('When raising a Rule 12(b)(2) defense, the defendant must provide an affidavit contradicting the jurisdictional allegations made by the plaintiff.') Thus, the Court must accept Plaintiff's allegation … ." *Gilliland v. Hurley,* No. CIV.A 09-1621, 2010 WL 830968, at *3 (W.D. Pa. Mar. 4, 2010)

## 2. Defendants Concede Personal Jurisdiction Concerning Prominent Systems, Inc.

Defendants' jurisdictional assessment is limited exclusively to Defendants Prominent Supplies, Inc. and Ky Tran. Specifically, the "Argument" Section of Defendants' Brief In

Support of Motion to Dismiss (ECF No. 22 at 6; Declaration of Attorney Alan K. Romero in Support of Motion to Dismiss and Motion to Transfer, ECF No. 21-1 at 10; Declaration of Ky Tran in Support of Motion to Dismiss and Motion to Transfer, ECF No. 21-1 at 15; Declaration of I. Nyoman Scorpio in Support of Motion to Dismiss and Motion to Transfer, ECF 21-1 at 19) fails to include any facts or cite to any affidavits or declarations contradicting Plaintiff's jurisdictional allegations as set forth in the Complaint (ECF No. 1). Moreover, Defendants fail to present any facts that might demonstrate that Prominent Systems, Inc. lacks the minimum contacts required to establish personal jurisdiction. In fact, Defendants clearly admit that Prominent Systems, Inc. is subject to personal jurisdiction by stating that "Plaintiffs cannot rely on the residence of one defendant to bring suit against multiple defendants in this district, where one but not all of them reside ... Resultantly, Defendants Prominent Supplies, Inc. and Ky Tran wish to avail themselves of their personal venue rights in seeking to have this instant Motion granted." (Defendants' Brief In Support of Motion to Dismiss, ECF No. 22 at 14).

### 3.   Defendant Prominent Supplies, Inc. is the Alter Ego of Defendant Prominent Systems, Inc.

When determining "whether a nonresident corporation is subject to the jurisdiction of a Court because it is the alter ego of another corporation which has minimum contacts with the forum", this Court considers the following factors: "common officers and directors; one corporation's ownership of the stock of the other; one corporation's supervision of the other; consolidation of tax returns and financial records, common use of employees; common use of business equipment and office facilities; common business purposes, and finally, the failure to observe corporate formalities." *Nat'l Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.*, 785 F. Supp. 1186, 1194–95 (W.D. Pa. 1992) (emphasis added) (citing *Savin Corp. v. Heritage Copy*

*Products, Inc.*, 661 F.Supp. 463 (M.D. Pa. 1987); *Clemens v. Gerber Sci. Inc.*, No. CIV.A. 87-5949, 1989 WL 3480, at *6 (E.D. Pa. Jan. 13, 1989); *See also Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 805–806 (3rd Cir.1981); *In re Chocolate Confectionary Antitrust Litig.* (674 F. Supp. 2d 580, 598 (M.D. Pa. 2009), the Middle District of Pennsylvania identified further factors such as "… (c) the group possesses a unified marketing image, including common branding of products; (d) corporate insignias, trademarks, and logos are uniform across corporate boundaries…" This Court further clarified that the alter ego theory centers on control, and is "less stringent" than the traditional piercing the corporate veil analysis. *Enter. Rent-A-Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co.,* 735 F. Supp. 2d 277 (W.D. Pa. 2010) (citations omitted).

Here, Prominent Supplies, Inc. is without question the alter ego of Prominent Systems, Inc. First, Defendants Prominent Systems and Prominent Supplies have common officers and directors. Specifically, Defendants' Declarant Nyoman Scorpio states in his Declaration that he is the president of Prominent Supplies, Inc. as well as the Marketing Director of Prominent Systems, Inc. (ECF No. 21-1 at 5, para 1)[2]. Mr. Scorpio also makes his declaration concerning both Prominent Systems and Prominent Supplies (ECF No. 21-1 at 5 paras 1, 2). Second, the two entities make common use of employees. In addition to Mr. Scorpio who admits to be an employee of both entities, Mr. Scorpio states in paragraph 28 of his declaration "… Defendant Prominent Supplies, Inc. is a small company with only 22 employees, 18 of whom are located in the Central District of California." Mr. Ky Tran, President of Prominent Systems provides the same headcount in his declaration for Prominent Systems. ("Prominent Systems, Inc. is a small business with 22 employees, 18 working from one location in City of Industry…", "Defendant

---

[2] Defendants submitted the same Exhibit for both of their Motions. Thus, for the sake of simplicity, Plaintiffs refer exclusively to ECF No. 21-1 when addressing these Exhibits.

Prominent Systems, Inc. is a small company with only 22 employees, 18 of whom are located in the Central District of California" ECF No. 21-1 at 15-16, paras. 13, 28) The remaining four shared employees appear to be located in Defendants' "Central and Eastern Division" in Houston, TX (Liedtke Decl. ¶ 3) Furthermore, the Summons and Complaint in this action was accepted by the same employee, Mr. Yosia Waharri, on behalf of Prominent Systems and Prominent Supplies (ECF No. 4 at 1 and 2). Third, the two entities have a common business purpose. Specifically, the project management services mentioned in the Scorpio declaration complements the activities of Prominent Systems (ECF No. 21-1 at 5, para 3). Fourth, Defendants make common use of business equipment and office facilities. Not only do both entities use the same telephone number (Liedtke Decl. ¶ 5) but they have a principal place of business at the same address (13095 E. Temple Ave., City of Industry, CA 91746), where they were also served with the Summons and Complaint. *See* Exhibits 7 and 10 to the Complaint, ECF No. 1-1 at 62 and 88. Just as in *In re Chocolate Confectionary Antitrust Litig.*, Defendants also use the same branding. The outside of Defendants' building further exemplifies that Prominent Supplies is the alter ego of Prominent Systems because the only visible logo/ advertising on that building is the Prominent Systems logo. *See* Complaint para 40, ECF No. 1 at 15. Moreover, when comparing the Prominent Systems and Prominent Supplies logos, there can be no question that these entities are one and the same. The figurative element is identical, the word PROMINENT is bold and dominant and the colors appear to be identical.

### 4.    The Corporate Shield Doctrine is Inapplicable to Defendant Ky Tran

Defendants allegation that Defendant Ky Tran is protected by the Corporate Shield Doctrine does not comport with Third Circuit law. The Third Circuit has long "concluded that a

corporate officer who actually and substantially participates in the corporation's act of trademark infringement is personally liable under section 43(a), even though he acted as an agent of the corporation rather than on his own behalf. Id." *Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992)(citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)) *See also Myers v. American Dental Association*, 695 F.2d 716, 722 (3d Cir.1982); *R.Q.C. Ltd., v. JKM Enterprises, Inc.*, No. 1:13-CV-307, 2014 WL 4792148, at *7 (W.D. Pa. Sept. 23, 2014); *Square D Co. v. Scott Elec. Co.*, No. CIV.A. 06-00459, 2008 WL 4877990, at *2 (W.D. Pa. Nov. 12, 2008); *Acteon, Inc. v. Vista Dental Prod.*, No. CIV.A.05-3847(JEI), 2006 WL 1207999, at *4 (D.N.J. May 3, 2006) (citing Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 303-05, 788 A.2d 268 (2002))

Ky Tran has done and does just that: On information and belief, Mr. Tran directs all business and commercial activities of Defendants Prominent Systems, Inc. and Prominent Supplies, Inc. On information and belief, Mr. Tran has authorized, directed, helped orchestrate, or participated in the infringement of Prominent's PROMINENT marks, knowing that the infringement would cause harm on their true owner, Prominent, which he knew and knows is located in Pennsylvania. (Complaint para 19, ECF No. 1 at 8-9). Moreover, in his declaration Mr. Tran states not once but twice that Prominent Systems has 22 employees (ECF No. 21-1 at 16-17, paras. 13, 28). Mr. Scorpio's declaration states the same (ECF No. 21-1 at 5 para 28). It is inconceivable that Mr. Tran as the president of an organization of this size would not have actually and substantially participates in all of the corporation's acts, including the willful and deliberate infringement of Prominent's valuable PROMINENT marks. At the very least the president of such an organization would have directed and authorized the trademark infringing activities. Moreover, Mr. Tran is the string puller behind all four regional Prominent Systems

entities including Prominent Systems' "Central and Eastern Division" (Liedtke Decl. ¶¶ 3-4; Exhibits 5-6 to the Complaint, ECF No. 1-1, p. 49-61).

### 5.      Plaintiffs did not Fail to Meet and Confer

Defendants allege that Plaintiffs failed to meet and confer regarding the issues raised in the instant motions (ECF Nos. 22 and 24 at 2). Defendants cite no authority in support of their position. Plaintiffs could not have been clearer in expressing their desire to resolve this dispute without resorting to this Court (Complaint at 6, Exhibit 2 to the Complaint). But Defendants refuted any attempt at such an amicable resolution. Defendants' lengthy meet and confer letter was nothing but a further attempt to delay. After all, that letter is devoid of any authority from the Third Circuit or any of the courts within it with the exception of one case from the Eastern District of Pennsylvania. Finally, Defendants' alleged surprise about being sued in this Court is baseless. Beginning with their initial cease and desist letter Prominent has emphasized that its letters did not intend to catalogue every possible cause of action and has in fact underlined its rights under Pennsylvania law (including amongst others a Pennsylvania state trademark registration) and several other state laws. (ECF No. 21-1, at 23).

For good order's sake, Plaintiffs note the following: Paragraph 24 of the Declaration submitted by Defendants' Counsel states that Exhibit 7 thereto "is a true and correct copy of an email exchange between this Declarant and counsel for Plaintiff on October 31, 2016." That statement is false. (Liedtke Decl. ¶¶ 7-9) A true and correct copy of that email exchange is attached as Exhibit B-1 to the Liedtke Declaration and contains, among other things, Opposing Counsel's unfortunate threat to file a retaliatory trademark application with the USPTO.

### C.      THE COMMONWEALTH OF PENNSYLVANIA HAS PERSONAL JURISDICTION OVER DEFENDANTS

### 1.    Applicable Standard and Burdens

In the Third Circuit "[t]he inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have 'purposefully directed [its] activities' at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted). Second, the litigation must 'arise out of or relate to' at least one of those activities. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir.1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'' *Burger King*, 471 U.S. at 476, (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. 154).".; *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007); *See also Miller Yacht Sales, Inc.*, 384 F.3d at 97; *Watson v. Blessey Marine Servs.*, No. 11-cv-1252, 2011 U.S. Dist. LEXIS 135181, at *8 (W.D. Pa. Nov. 23, 2011); *Nutrimost, LLC v. Werfel*, No. 2:15CV531, 2016 WL 5107730, at *5 (W.D. Pa. Mar. 2, 2016).

When considering a motion to dismiss for lack of personal jurisdiction, "the plaintiff need only establish a *prima facie* case of personal jurisdiction and is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)

This Court also has specific personal jurisdiction over Defendants under the tort-out/ harm-in provision of Pennsylvania's long arm statute. "The statute provides that personal jurisdiction extends to any person who "[c]aus[es] harm or tortious injury in th[e] Commonwealth by an act or omission outside th[e] Commonwealth." 42 Pa. Cons.Stat. Ann. 5322(a)(4).", *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998); *see also* "Plainly the Court did not intend to preclude a "tort out/harm in" exercise of long-arm

jurisdiction when the forum as a place of harm was clearly and specifically foreseeable. See 444 U.S. at 297, 100 S.Ct. at 566.", *Paolino v. Channel Home Centers*, 668 F.2d 721, 724 (3d Cir. 1981); *Schwilm v. Holbrook*, 661 F.2d 12, 15 (3d Cir. 1981); *Horne v. Adolph Coors Co.*, 684 F.2d 255, 258 (3d Cir. 1982); *McMullen v. European Adoption Consultants, Inc.*, 129 F. Supp. 2d 805, 809 (W.D. Pa. 2001); *Renner v. Roundo AB*, No. 1:08-CV-209, 2010 WL 3906242, at *3 (W.D. Pa. Sept. 29, 2010)

Under the Pennsylvania long-arm statute, personal jurisdiction may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States. 42 Pa. Cons. Stat. § 5322(b); *See Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984). "[E]ven a single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact.", *Thompson v. Wyrks Tool & Mach. Ltd.*, No. 09-581, 2009 U.S. Dist. LEXIS 117479, at *5 (W.D. Pa. Nov. 13, 2009). Physical entry into Pennsylvania is not required, though the defendant must deliberately target the forum with its activities in some manner. *See O'Connor*, 496 F.3d at 317.

### 2. Personal Jurisdiction in this Commonwealth Exists When Applying the 3rd Circuit's Traditional Test

#### (a) Defendants Purposefully Directed Their Activities at This Forum

Plaintiffs respectfully submit that this Court could find specific personal jurisdiction based on any one of the below acts alone. When considered in combination, a finding of specific personal jurisdiction is inevitable.

##### i. Defendants use Pennsylvania's PennBid Bidding System to Expressly Aim Their Willful

**Trademark Infringement at Consumers in this Commonwealth**

Defendants engage in trademark infringing activity throughout the US. In Pennsylvania, these activities include utilizing the PennBid bidding system. PennBid is a bidding and procurement platform utilized by more than 450 municipal and government agencies within this Commonwealth to solicit bids from private companies for their projects. To date, more than $ 10 billion in solicitations have been processed through the PennBid system. (Complaint ¶¶ 11, 17)

Notably, Defendants do not deny this fact nor do they contend that no actual sales to Pennsylvania occurred.

These facts are similar to the ones that lead the court in *Automated Med. Prods. Corp. v. Int'l Hosp. Supply Corp.*, (CIVIL ACTION NO. 97-2328, 1998 U.S. Dist. LEXIS 1231, at *13-14 (E.D. Pa. Jan. 29, 1998) to find specific personal jurisdiction based on defendant's purposeful and voluntary association with Pennsylvania through bidding activity.

### ii.     Defendants Operate an Interactive Website

Defendants' websites located at www.prominentinc.com and www.prominentsystems.com are sufficiently interactive when analyzed based on the sliding scale test set forth by this Court in sliding scale in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). This test "has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet Web site.", *Toys "R" Us, Inc.*, 318 F.3d at 452.

Defendants' websites are not active websites on the *Zippo* scale. That is unsurprising due to the nature of Defendants' business which caters largely to municipalities and other entities whose procurement is done through soliciting bids, for example via the PennBid system

12

discussed in Section 2. (a) i. immediately above. Given the volume and individualized nature of Defendants' products and services even potential consumers who are not required to solicit bids would not make online purchases in a way consumers would from www.toysrus.com.

However, for at least the following reasons Defendants' websites are interactive and commercial and as such fall within the second category defined in *Zippo*: www.prominentinc.com/contact-us/ contains an interactive contact form that allows visitors of the website to exchange information with the host computer. Defendants' websites also contain ample invitations for visitors to contact Defendants in order to place orders. These include tag lines such as "Information about our products and services can be found here. Or contact our sales department". Defendants' invitations to purchase also contain frequent displays of Defendants' email address. Notably, Defendants, who could have chosen any email address to interact with its website visitors, chose "sales@prominentinc.com". This address is used in connection with both Defendants "Western Division" as well as their "Central and Eastern Division". Moreover, Defendants frequently display their telephone numbers in order for website visitors to interact with Defendants and place orders.

Needless to say, Defendants' infringing use of Prominent's PROMINENT trademark could not be more prominently displayed on Defendants' websites. Furthermore, on wwww.prominentinc.com Defendants proclaim not once but twice that their business and sales activities are not only national in nature but indeed global: "Prominent Systems, Inc. is a worldwide manufacturer of high quality Activated Carbon Products and have Emerged as one of the Leaders in Filtration Industry." "Prominent Systems started out as a worldwide distributor of Activated Carbon and gradually expanded into onsite filter bed removal and installation services." (Exhibit 7 to the Complaint, ECF No. 1-1 at 63, 65) The latter quote also showcases

Defendants' octopus like progressive encroachment into Prominent's various business lines. The global scale of Defendants' business is corroborated by Defendants' Ariba distributor profile where they identify their "Ship-to or Service Locations" as "Global". (Exhibit 8 to the Complaint, ECF No. 1-1 at 81)

These facts are highly similar to the ones that led this Court to find personal jurisdiction in *Square D Co.*, 2008 WL at *1 ("At issue is in this case is www.anyelectric.com's level of interactivity. Steven Mandel has testified that there was no way to make an order through Any Electric's website […]. However, he further testified that the website provided information for placing an order for the products listed through a link to e-mail (sales@anyelectric.com) or by calling a toll-free number listed on the website. […] The website is clearly more than mere advertising. By allowing a potential customer to submit information pertaining to a particular product, Any Electric's website allowed information to be exchanged with the company. The site allowed existing and potential customers to interact with Any Electric by submitting an inquiry about particular products, putting it in the "middle ground" of the Zippo scale.") (citations omitted)

Defendants specifically target Pennsylvania consumers searching for PROMINENT on Google or other search engines and lure them to Defendants' websites through the intentional use of metatags and search engine optimization. (Liedtke Decl. ¶¶ 20-26) In fact, Defendants' marketing agency SevenDesignAvenue, as identified on Defendants websites, prides itself in local search engine optimization. ("SEO") (*id*) Defendants even use Prominent's PROMINENT trademark itself as a metatag in their website. (*id*) *See Xcentric Ventures, LLC v. Arden,* No. C 10-80058 (SI), 2010 WL 2560484, at *4 (N.D. Cal. June 22, 2010).

While Defendants do not mention the *Zippo* case or this Court's sliding scale test,

Defendants rely on *De La Fuente v. I.C.C.*, 451 F.Supp. 867, 872, fn. 4 (N.D. Ill.) and *Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1244, fn. 5 (11th Cir. 2011). These courts employ the universal jurisdiction view whereas a party who uses an infringing mark anywhere (including on a merely passive website) should be subject to personal jurisdiction anywhere. *See Ty, Inc. v. Baby Me, Inc.*, 64 U.S.P.Q.2d 1442, 2001 WL 34043540 (N.D. Ill. 2001); *Licciardello v. Lovelady*, 544 F.3d 1280, 88 U.S.P.Q.2d 1469 (11th Cir. 2008).

### iii.   Defendants Individually Target Hundreds of Pennsylvania Consumers at Tradeshows

In addition to their national advertising and marketing campaign, Defendants have also exposed hundreds of Pennsylvania consumers to their trademark infringing materials. Specifically, Defendants claim that they have "co-exhibited at trade shows" with Plaintiffs for at least 10 years. (Liedtke Decl. ¶¶ 27-28; Exhibit B-4 thereto). While Plaintiffs are not aware of such a long history of tradeshow activity by Defendants, Defendants did attend this year's Annual Conference of the American Waterworks Association ("AWWA") At that tradeshow, Defendants' infringing materials included a brochure in which Defendants refer to themselves as PROMINENT rather than Prominent Systems. (Complaint p. 17; Exhibit 16 to the Complaint).

Over 300 attendees at that trade show were from Pennsylvania (Liedtke Decl. ¶¶ 29-30 and Exhibit B-5). Indeed actual confusion has occurred at that trade show. Specifically, prospective and existing Prominent customers reported to Prominent that they were misled by and had mistakenly visited Prominent Systems' tradeshow booth when they were looking for Prominent's booth at that tradeshow. (Complaint ¶ 47)

These facts are very similar to the ones that led the Third Circuit to affirm the District Court's ruling in *Moore v. Little Giant Indus., Inc.*, 513 F. Supp. 1043, 1049 (D. Del. 1981),

aff'd, 681 F.2d 807 (3d Cir. 1982).

> **iv.    Defendants are set to Take Their Trademark Infringing Activities to this Commonwealth as a Tradeshow Exhibitor**

In addition exposing hundreds of Pennsylvania consumers to their infringement at tradeshows outside this Commonwealth, where even actual confusion as already occurred (Complaint ¶¶ 11, 47, 50, 69 and Exhibits 4 and 16 to the Complaint), Defendants are set to double down on all the harm they already inflicted on Plaintiffs in this District by exhibiting at the 2017 AWWA Annual Conference. (*id*) That conference will take place within the borders of this Commonwealth (Philadelphia) and rather than being mere attendants at this industry leading tradeshow, Defendants will be exhibitors. (*id*) To be clear, Defendants' attendance of this tradeshow is not a mere possibility but a fully manifested and executed scheme. Defendants' tradeshow booth is only a short walk away from Plaintiff's and Defendants have already paid a deposit to be an exhibitor. (*id*) The infringing advertisement in which Defendants refer to themselves as "PROMINENT" rather than Prominent Systems (Complaint p. 17; Exhibit 16 to the Complaint), has been distributed at this year's AWWA Annual Conference and Defendants will almost certainly bring this, and other trademark infringing materials, to Philadelphia this summer. Defendants do not deny these allegations nor do they attempt to contradict the legal conclusions arising therefrom.

Courts have repeatedly found tradeshow attendance to be a proper basis for specific personal jurisdiction. *See e.g. Burt v. Niagara Mach. & Tool Works*, 301 F. Supp. 899, 901 (W.D. Pa. 1969); *LTM Corp. v. Edward M. Livingston & Sons, Inc.*, 339 F. Supp. 1270, 1271 (E.D. Pa. 1972); *Miller Yacht Sales*, 384 F.3d at 98; *Moore*, 513 F. Supp. at 1049; *Farouk Sys.,*

*Inc. v. AG Glob. Prod.*, LLC, No. CV H-15-0465, 2015 WL 12778401, at *3 (S.D. Tex. June 22, 2015); *Robert Bosch*, 2011 WL at *4 (D. Nev. July 1, 2011) ("In the Court's view, using Las Vegas' AAPEX and SEMA trade shows to further a commercial purpose can hardly be seen as 'random, fortuitous, or attenuated contacts' with Nevada." (citation omitted)).

Defendants must agree since they rely on *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1370 (Fed. Cir. 2010) and *Navajo Nation v. Urban Outfitters, Inc.*, 918 F.Supp.2d 1245, 1256 (Dist. N.M. 2013). In *Patent Rights*, the Federal Circuit emphasized the importance of trade show attendance in the context of the personal jurisdiction analysis and in *Navajo Nation* the District Court of New Mexico found specific personal jurisdiction based on defendant's trade show attendance in the state of New Mexico.

Finally, "[i]f a corporation determines that the risk of being subject to personal jurisdiction in a particular forum is too great, it can choose to sever its connection to the state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Defendants did the opposite. They doubled down on their trademark infringing activities by bringing them to Plaintiff's backyard.

### (b)    This Action Arises out of or Relates to These Activities

Under the second factor, the litigation must arise out of or relate to at least one of Defendants' contacts with the forum state. *Nutrimost, LLC,* 2016 WL, at *5 (citing *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 418 n.13 (U.S. 1984). This factor requires a nexus between the alleged conduct and the forum-related activities. The Third Circuit recognizes that the required analysis is extremely fact sensitive and thus has declined to lay down a specific rule for this prong. Rather, Courts approach each case individually and take a "realistic approach" to analyzing a defendant's contacts with a forum. *Miller Yacht Sales, Inc.,* 384 F.3d at

100. Significantly, even one related contact can give rise to specific jurisdiction. *Square D Co.*, 2008 WL at *11.

Here, the facts easily demonstrate the required link between Defendants' activities and the forum state. First, Defendants deliberately solicit business in Pennsylvania by utilizing the PennBid bidding system. Notably, Defendants do not contend that no actual sales to Pennsylvania occurred. Additionally, Defendants have targeted Plaintiffs and their valuable trademarks by misappropriating them and engaging in various web-related activities through their interactive website that specifically targets consumers and solicits sales in the central and eastern regions of the United States, including Pennsylvania. These activities generate confusion among Plaintiff's consumers in the forum and elsewhere. Plaintiffs particularly note that because Defendants misappropriate Plaintiff's trademarks not just in connection with their products and services, but also with their company name, each and every one of Defendants' acts causes harm to Plaintiff both inside and outside of this forum.

Moreover, Defendants have exposed hundreds of Pennsylvania consumers to their trademark infringing materials when exhibiting at trade shows. (Complaint p. 17; Exhibit 16 to the Complaint). Furthermore, Defendants have registered to exhibit at the 2017 AWWA Annual Conference that will take place in Philadelphia, Pennsylvania. (Complaint ¶¶ 11, 47, 50, 69 and Exhibits 4 and 16 to the Complaint). Information relating to attendance of this tradeshow in the forum state including for example the location of Defendants' booth (just a short walk away from Plaintiffs' booth) is publically available and displays Defendants' infringing trade name. *id*. Thus, the facts clearly demonstrate that personal jurisdiction is reasonably foreseeable. *See Sullick v. United Pet Grp., Inc*., No. CIV.A. 14-2950, 2015 WL 3643988, at *6 (E.D. Pa. June 12, 2015).

(c)      **The Exercise of Jurisdiction Comports with Fair Play**

**and Substantial Justice**

"Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant at step three of the specific-jurisdiction-inquiry process 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' [*Miller Yacht Sales, Inc. v. Smith*, 384 F. 3d 93, 97 (3d Cir. 2004)] (quoting Burger King, 471 U.S. at 477). The burden upon the defendant at this stage of the inquiry is considerable. *See Pennzoil Prods. Co. v. Colelli & Assocs.*, Inc., 149 F.3d at 207 (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd., v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3rd Cir.1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). *R.Q.C. Ltd.*, 2014 WL at *6.

Further, "'when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the defendant.'" *Southco, Inc. v. Matdan Am. Corp.*, No. 98-5425, 1998 U.S. Dist. LEXIS 19416, at *20 (E.D. Pa. Dec. 8, 1998) (citation omitted). *See also Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114 (1987).

"As the Third Circuit has observed 'The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and [t]he procedural and substantive interests of other nations.' *O'Connor*, 496 F.3d at 324 (internal quotations

omitted). *R.Q.C. Ltd.,* 2014 WL 4792148, at *6.

Again, Defendants do not discuss this multifactor test at all, let alone make a "compelling" case as to why it would be unreasonable for this Court to exercise jurisdiction. In fact, Defendants do not even discuss the factors laid out in their own brief. This is likely because Defendants cannot establish, based on these factors, that litigation of this dispute in this Commonwealth would be "so gravely difficult and inconvenient" that they would be placed at a "severe disadvantage in comparison to" Prominent. *Burger King*, 471 U.S. at 478.

Defendants instead focus solely on a chart indicating alleged distances between Plaintiffs' choice of forum and Defendants' desired forum. This argument is flawed because the chart produced by Defendants is neither borne out by the facts nor supported by law. First reprinted below is the chart created by Defendants and a chart that reflects the actual facts of this case.

Defendants' Chart:

| Party | Distance to CDC[9] | Distance to WDP[10] |
|---|---|---|
| Plaintiff's "District Office" | 41.1 Miles | 2,393 Miles |
| Prominent Systems, Inc. | 16.4 Miles | 2,414 Miles |
| Plaintiff's Counsel (Mr. Liedtke) | 39.2 Miles | 2,393 Miles |
| Prominent Supplies, Inc. | 14.4 Miles | 2,416 Miles |
| Defendant's Counsel (Mr. Romero) | 11.2 Miles | 2,418 Miles |
| Ky Tran (Individual Defendant) | 10.5 Miles | 2,425 Miles |

Plaintiffs' Chart:

| Party | Distance to CDCA | Distance to WDPA |
|---|---|---|
| Plaintiff's "District Office" | Non existent | Non existent |
| Plaintiff Prominent Fluid, Controls, Inc. | 2426 mi | 13.6 mi |
| Plaintiff Prominent GmbH | 5811 mi | 4122 mi |
| Plaintiff Prominent Systems spol. s r.o. | 5944 mi | 4308 mi |
| Defendant Prominent Systems, Inc. | 16.2 mi | 2414 mi |
| Defendant Prominent Supplies, Inc. | 16.2 mi | 2414 mi |
| Defendant Ky Tran | 10.3 mi | 2420 mi |
| Defendant's Counsel (Mr. Romero) | 10.9 mi | 2418 mi |
| Plaintiff's Counsel (Mr. Liedtke) California Office | 38.9 mi | 2429 mi |

| Plaintiff's Counsel (Mr. Liedtke) New York Office | 2792 mi | 374 mi |
| Plaintiff's Counsel (Mr. Liedtke) Alexandria, Virginia Residence | 2670 mi | 247 mi |

*See also* Liedtke Decl. ¶ 31 and Exhibit B-6.

Plaintiffs also note that none of Defendants' declarations nor any of their briefs reveal the URLs accessed as part of their calculations or even which cities or street addresses Defendants used in their calculations. It is further unclear what Defendants mean by "Google Directions Tool". This could refer to several different Google products such as Google Maps or Google Mapmaker.

To clarify, the "District Office" relied on by Defendants does not exist and has not existed for at least four years. (Weber Decl. ¶¶ 9-11) However, even if such an office existed, it would have no bearing on this analysis because what matters is where the evidence necessary for Plaintiffs to prove their case is located. That evidence is located right here in Pittsburgh as well as in Germany and the Czech Republic. As far as the latter two locations are concerned, Pittsburgh is only half as far away (at least in terms of travel time) as the Central District of California and the time difference is only six rather than 9 hours. In conclusion, the above chart shows that this Court is the most convenient forum to all parties.

When considering the facts of this case in light of the applicable Third Circuit law, it becomes clear that exercising jurisdiction comports with fair play and substantial justice. Regarding the first factor, Defendants' "litigation burden" is negligible and nothing more than the ordinary burden of litigating outside one's own forum. Firstly, electronic filings are mandatory in the Western District of Pennsylvania and Defendants and their counsel would be required to make very few, if any, appearances in person before trial. Any residual burden can be mitigated by efficient case management. *See Telebrands Corp. v. Mopnado,* No. CV21407969JLLJAD, 2016 WL 368166, at *1 (D.N.J. Jan. 12, 2016), report and

recommendation adopted, No. CV147969JLLJAD, 2016 WL 355072 (D.N.J. Jan. 28, 2016). Secondly, in light of modern means of communication and travel, Defendants could easily litigate here. Thirdly, Defendants do not require local counsel to litigate in this Court, saving Defendants' considerable costs and expense. Fourthly, Defendants' counsel is located near Defendants and Defendants can thus easily meet with counsel in person. Lastly to the extent Defendants' claim litigating in this Commonwealth would burden them by having to bring "cumbersome equipment" to this District (Brief in Support of Motion to Transfer, ECF No. 24 at 10, 12), any such complaint is unfounded. First, Defendants likely do not even possess any such equipment and the images on Defendants' website as shown on page 40 of the Complaint appear to be photo shopped. (Weber Decl. ¶ 12) Second, Defendants products are typically sold in bags or sacks. (Weber Decl. ¶ 13) If it became necessary, representative samples could be brought to this District, possibly empty, and at negligible expense. If anything, Plaintiffs will be the party to introduce heavy machinery and that machinery is located right here in this District. (Weber Decl. ¶¶ 14-15)

Indeed, if this was a "compelling reason", every case in which jurisdiction is based on an express aiming theory would have to be dismissed, since in these cases by their very nature, the defendant is not physically present in the forum state. The District Court of New Jersey agrees holding: "The Due Process Clause is not a 'territorial shield to interstate obligations that have been voluntarily assumed.' *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183. *Zippo,* 952 F.Supp. at 1127.", *Food Scis. Corp. v. Nagler,* No. CIV.09-1798 (JBS), 2010 WL 1186203, at *5 (D.N.J. Mar. 22, 2010); *See also Newtechbio, Inc. v. Septicleanse, Inc.,* No. CIV.A. 12-5882 TJB, 2013 WL 3271001, at *5 (D.N.J. June 27, 2013) (Finding holding further: "We must also give due regard to the Plaintiff's choice to seek relief in [this forum].") Since they rely on *Patent Rights*

*Protection Group, LLC v. Video Gaming Technologies, Inc.*, Defendants must agree as the *Patent Rights* court held "Indeed, their admitted presence at numerous trade shows in Nevada indicates that, despite their arguments to the contrary, neither company faces a particularly onerous burden in defending itself in Nevada." *Patent Rights Prot. Grp., LLC*, 603 F.3d at 1370.

Thus the first factor presents no barrier to litigation in this Commonwealth and instead weighs in Plaintiffs' favor. Even if this factor weighed in Defendants' favor, "this burden alone is not the 'compelling case' that litigation in Pennsylvania would be unreasonable and unfair' that Defendant must make to overcome the presumption of constitutionality and prevail on this factor. Sandy Lane Hotel, 496 F.3d at 325 (quoting Burger King, 471 U.S. at 477, 105 S.Ct. 2174)." *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 401 (M.D. Pa. 2013). Since Defendants fail to discuss anything else, the inquiry could end here. However, the remaining factors also weigh in Plaintiffs' favor.

As for the second factor this Commonwealth has a strong and heightened interest in adjudicating this dispute. First, five of the ten causes of action stated in the Complaint are based on Pennsylvania law. Second, Plaintiff Prominent Fluid Controls, Inc. is both incorporated and headquartered in this Commonwealth. *See* "New Jersey has a legitimate interest in this matter, given the nature of certain of Plaintiff's claims (i.e., Plaintiff's claim for unfair competition under New Jersey statutory law) and the fact that Plaintiff is both incorporated and headquartered in that State." *Telebrands Corp. v. Mopnado*, No. CV21407969JLLJAD, 2016 WL 368166, at *8 (D.N.J. Jan. 12, 2016), *report and recommendation adopted*, No. CV147969JLLJAD, 2016 WL 355072 (D.N.J. Jan. 28, 2016) "In addition, Pennsylvania has a strong interest in providing a forum for the resolution of disputes of its residents and protecting its residents from the type of conduct which plaintiff alleges caused harm in Pennsylvania.", *Endless Pools, Inc. v. Wave Tec*

23

*Pools, Inc.*, 362 F. Supp. 2d 578, 585 (E.D. Pa. 2005). Moreover, "...[i]n any event, the Court is satisfied that several factors weigh in favor of the exercise of personal jurisdiction in the instant case. Foremost among these are Plaintiff's interest in obtaining convenient and effective relief in the forum of its choice and Pennsylvania's interest in protecting its citizens from the sale of infringing goods within its borders. *See Square D.*, 2008 WL 4462298 at *12", *R.Q.C. Ltd.*, 2014 WL at *6. *See* also *Aerolink Int'l v. Colonial Parking*, No. 96-1130, 1996 U.S. Dist. LEXIS 12430, at *9 (E.D. Pa. Aug. 21, 1996) ("Pennsylvania clearly has an interest in protecting its residents from trademark infringement and resulting consumer confusion that may likely occur within its boundaries") In this case, Pennsylvania consumers are being confused by Defendants' online advertising and marketing. Hundreds of Pennsylvania consumers have also been confused by Defendants marketing activities at tradeshows and in June 2017 Defendants are set to double down on their infringing activity by taking it to the AWWA Annual Conference in Philadelphia. Finally, "Pennsylvania is undoubtedly interested in protecting the intellectual property of corporations doing business in the Commonwealth, and adjudicating disputes regarding alleged infringement is an important facet of that protection." *Gentex Corp.*, 978 F. Supp. 2d at 401; *see also Horne*, 684 F.2d at 258; *Newtechbio, Inc. v. Septicleanse, Inc.*, No. CIV.A. 12-5882 TJB, 2013 WL 3271001, at *5 (D.N.J. June 27, 2013). Hence, the second factor weighs heavily in Plaintiffs' favor.

As for the third factor, Plaintiffs have "an obvious interest in obtaining an efficient resolution of its claims, an interest that would not be served by either dismissing its claims or transferring this case to another district.", *Telebrands Corp.*, 2016 WL at *8., report and recommendation adopted, No. CV147969JLLJAD, 2016 WL 355072 (D.N.J. Jan. 28, 2016); *see also Endless Pools, Inc.*, 362 F. Supp. 2d at 585. In addition to Plaintiffs' natural interest to

litigate here, where they employ over one hundred local residents and throughout their more than thirty year loyalty to this District have generated nearly half a billion dollars in revenue as well as made corresponding tax contributions to this Commonwealth, all of the evidence for this case is located in this District. While Defendants' Declarations contain mostly conclusions of law and a few facts that address the irrelevant issue of general jurisdiction, they are silent on the defenses that Defendants plan to raise in this case. Assuming that Defendants will raise the defenses customarily raised in trademark litigation, all of the pertinent evidence, even for Defendants' case is located in this District. Thus, this factor weighs in Plaintiffs' favor as well.

Factors four and five are inapplicable or present no barrier to litigation in this Commonwealth. There exists no known sovereignty conflict between Pennsylvania and California and Defendants have not raised the existence of one. Other nations have no procedural or substantive interests in this dispute since it concerns only the territory of the United States. Besides, litigation in this Commonwealth will lead to the most efficient resolution of this dispute.

Accordingly, litigation in this Commonwealth and in this District comports with fair play and substantial justice.

///

### 3.      Defendants Trademark Infringing Activities Outside This Commonwealth Harm Plaintiffs Inside This Commonwealth

This Court also has personal jurisdiction under the tort-out/ harm-in provision of Pennsylvania's long arm statute.

Specifically, Defendants do not hide, but tout, the fact that their business and sales activities are national and even global in nature. (Exhibit 7 to the Complaint, ECF No. 1-1 at 63, 65) This is corroborated by Defendants' Ariba distributor profile where they identify their "Ship-

to or Service Locations" as "Global". (Exhibit 8 to the Complaint, ECF No. 1-1 at 81) While Defendants acknowledge it with disdain, Prominent is also a global business. (Brief in Support of Motion to Dismiss and Brief in Support of Motion to Transfer, ECF Nos. 22 and 24 at 1) In fact, Prominent is the global market leader in its field. (Weber Decl. ¶ 8).

In addition to their extensive online activities which include multiple websites, search engine optimization and the use of metatags (*see* Section C. 2. (a)(ii) above), Defendants engage in national advertising in various online directories (Complaint at 5) as well as in magazines. Defendants have, for example, advertised in "Water Quality Products" ("WQP"). (Liedtke Decl. ¶¶ 32-33; Exhibit B-7 thereto). Based on its publisher's media kit, WQP is an industry publication with more than 25,000 subscribers, 76.5 % of which have "buy/ spec/ purchase authority". (Liedtke Decl. ¶¶ 34-35, Exhibit B-8 thereto).

Defendants claim that they have "co-exhibited at trade shows" with Plaintiffs for at least 10 years. (Liedtke Decl. ¶¶ 27-28; Exhibit B-4 thereto). While Plaintiffs are not aware of such a long history of tradeshow activity by Defendants, Defendants did attend this year's AWWA Annual Conference in Chicago, IL and this year's WEFTEC conference in New Orleans, LA. There, Defendants' infringing materials included a brochure in which Defendants refer to themselves as PROMINENT rather than Prominent Systems. (Complaint p. 17; Exhibit 16 to the Complaint). More importantly, actual confusion has already occurred at this year's AWWA conference (Complaint at 47; p. 14 above).

Since Defendants not only infringe Plaintiffs' marks by using them as a trademark but by using them as a company name, Plaintiffs are harmed by every public act in which Defendants engage.

        **4.**        **This Court Also has Personal Jurisdiction Under the Calder**

### Effects Test

Although Defendants' make no mention of it, Plaintiffs respectfully submit that based on the facts set forth above specific personal jurisdiction also exists if the Court was to apply the Calder Effects Test set forth in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482,; especially because under *Calder* "the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone ... are far too small to comport with the requirements of due process' under our traditional analysis. *IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998)*", *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)

### D.      Venue in this Court is Proper Under 28 U.S.C. § 1391

This is a straw man argument just like Defendants' reliance on general personal jurisdiction arguments. Defendants purport to assert that venue is improper pursuant to Fed. R. Civ. P. 12(b)(3). "[A] motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense...It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it." *Am. Dental Ass'n*, 695 F.2d at 724.

Yet, in their Brief in Support of Motion to Dismiss, Defendants cite to 28 U.S.C § 1391(b) as the standard to determine whether venue is proper when considering a 12(b)(3) Motion to Dismiss but do not reference a single case. Other than setting forth the requirements for venue under 28 U.S.C § 1391, based on the statute alone, Defendants' Brief in Support of Motion to Dismiss is utterly devoid of any analysis or application of the controlling statute whatsoever as applied to Plaintiffs' choice of venue. Thus, Defendants have failed to meet their burden of proving improper venue.

Moreover, contrary to Defendants' entirely unsupported position, venue is proper. First,

venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, 28 U.S.C. § 1391(b)(2). As the above discussion on personal jurisdiction demonstrates, a substantial part of the events giving rise to Plaintiff's causes of action occurred in Pennsylvania. Moreover, in trademark cases, Courts in this Circuit have held that venue is proper when, as here, the injury is largely felt in the forum. *See Endless Pools, Inc.,* 362 F. Supp. 2d at 586; *DermaMed, Inc. v. Spa de Soleil, Inc*., 152 F. Supp. 2d 780, 782 (E.D. Pa. 2001).

 Specifically, as discussed in detail above, Plaintiffs have alleged a likelihood of confusion including initial interest confusion, Defendants are members of the PennBid System (Complaint ¶¶ 11, 17) to procure contracts with government agencies as well as private organizations in Pennsylvania, Defendants' interactive website reaches this District, as does their targeted advertising through Water Quality Products magazine.  Moreover, Defendants are aware that the injury was and will largely be felt in this District where Defendants knew and know Prominent is located.

Finally, personal jurisdiction exists over all Defendants under all of the theories set forth above. Thus, venue is proper pursuant to 28 U.S.C. § 1391(b)(3). *See Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.,* 885 F. Supp. 2d 767, 785 (E.D. Pa. 2012)

## E. DEFENDANTS FAIL TO MEET THEIR BURDEN TO SHOW THAT TRANSFER IS APPROPRIATE

As this Court pointed out, "[o]rdinarily, courts will defer to the plaintiff's choice of forum, *Jumara*, 55 F.3d at 880, especially where the plaintiff's choice is her home forum, Stillwagon, 2013 WL 1180312 at *26 (citing *Samsung SDICo., Ltd. v. Matsushita Elec. Indus. Co* ., 524 F.Supp.2d 628, 631 (W.D.Pa.2006))" *Farkas v. Rich Coast Corp*., No. 2:13-CV-00926-

LPL, 2014 WL 550594, at *25 (W.D. Pa. Feb. 11, 2014). Here, Plaintiffs have been loyal residents of this District for over thirty years, contributing to the local economy by generating almost half a billion dollars in revenue with its over 100 hundred Pittsburgh based employees.

In the light thereof, this Court further held it "is vested with broad discretion in determining whether transfer of venue is appropriate. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir.1973) (citations omitted); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir.1995).", *Farkas*, 2014 WL at *24.

In *Jumara* the Third Circuit set forth the following multi-factor test to determine whether transfer is proper:

> "In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) …, and, indeed, commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' 15 Wright, Miller & Cooper § 3847. While there is no definitive formula or list of the factors to consider, *see* 1A Pt. 2 Moore's ¶ 0.345[5], at 4363, courts have considered many variants of the private and public interests protected by the language of § 1404(a).
>
> The private interests have included: plaintiff's forum preference as manifested in the original choice, 1A Pt. 2 Moore's ¶ 0.345[5], at 4363; the defendant's preference, 15 Wright, Miller & Cooper § 3848, at 385; whether the claim arose elsewhere, *id.* § 3848; the convenience of the parties as indicated by their relative physical and financial condition, *id.* § 3849, at 408; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, *id.* § 3851, at 420–22; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), *id.* § 3853.
>
> The public interests have included: the enforceability of the judgment, 1A Pt. 2 Moore's ¶ 0.345[5], at 4367; practical considerations that could make the trial easy, expeditious, or inexpensive, *id.;* the relative administrative difficulty in the two fora resulting from court congestion, *id.,* at 4373; 15 Wright, Miller & Cooper § 3854; the local interest in deciding local controversies at home, 1A Pt. 2 Moore's ¶ 0.345[5], at 4374; the public policies of the fora, *see* 15 Wright, Miller & Cooper § 3854; and the familiarity *880 of the trial judge with the applicable state law in diversity cases, *id.*"
>
> *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995); *See also Farkas*, 2014 WL *24.

Defendants do not even mention the *Jumara* test let alone discuss it. This is particularly detrimental because "[t]he moving party bears the burden of demonstrating that transfer of venue is appropriate at each step of the inquiry. *Mitel Networks*, 943 F.Supp.2d at 467 (citing Jumara, 55 F.3d at 879–80)." *Farkas*, 2014 WL at *24.

Putting aside the utter lack of authority and argument, transfer to the Central District of California is undoubtedly inappropriate.

As a preliminary matter, Defendants rely on what they call the "Volkswagen 100-Mile Rule" based on *In re Volkswagen of America, Inc.*, 506 F.3d at 386 (5th Cir. 2007). For good reason, this Court has never even cited that case; neither has the Third Circuit or any other District Court within it. Plaintiffs respectfully submit that this should remain the case. Such a simplistic and narrow test simply does not comport with the layered and multifaceted approach set forth in *Jumara* and employed by this Court, the Third Circuit and the other Courts within this Circuit. Moreover, when viewed in the context of the overall issue at bar, i.e. whether this Court has specific personal jurisdiction over Defendants and whether transfer is appropriate, it becomes clear that employing the alleged Fifth Circuit "Volkswagen 100-Mile Rule", myriad, if not most, cases in which jurisdiction is based on an express aiming theory would have to be dismissed, since in these cases by their very nature, the defendant is not physically present in the forum state but more than 100 miles away. As outlined in Section C. 2 (c) above, "[t]he Due Process Clause is not a 'territorial shield to interstate obligations that have been voluntarily assumed.' *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183. *Zippo,* 952 F.Supp. at 1127.", *Food Scis. Corp. v. Nagler*, No. CIV.09-1798 (JBS), 2010 WL 1186203, at *5 (D.N.J. Mar. 22, 2010). Due to their reliance on *Patent Rights Protection Group, LLC v. Video Gaming Technologies, Inc.*, Defendants must agree that the alleged Fifth Circuit "Volkswagen 100-Mile Rule" is too

broad strokes a concept since in *Patent Rights Protection Group* the Federal Circuit found "[i]ndeed, their admitted presence at numerous trade shows in Nevada indicates that, despite their arguments to the contrary, neither company faces a particularly onerous burden in defending itself in Nevada." *Patent Rights Prot. Grp., LLC*, 603 F.3d at 1370.

Turning now to the Third Circuit's multi-factor *Jumara* test: First, Plaintiffs clearly indicated their preference to litigate in this District. Second, although Defendants would prefer to litigate in the Central District of California, that preference is unjustified because the Central District of California is less convenient for all parties given that the most of the evidence is located here. Besides, "[Defendant] consciously chose to conduct business in [this forum], pursuing profits from the actions that are now in question." (*Newtechbio, Inc. v. Septicleanse, Inc*., No. CIV.A. 12-5882 TJB, 2013 WL 3271001, at *5 (D.N.J. June 27, 2013)) and should not be allowed to disturb Plaintiff's choice of venue through blanket and unsubstantiated allegations of inconvenience. Furthermore, "[a]s the Supreme Court stated in its Barrack opinion, supra, 376 U.S. at 633-634, 84 S.Ct. at 817: 'There is nothing in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue.'" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)

As for the third factor, although Defendants try to portray themselves as a small business, they are not. With four subsidiaries, a "Central and Eastern Division", their sizable headquarters, national business operations and up to ten million dollars in annual revenue they are anything but small. Defendants also chose to avail themselves of the privilege of doing business in this Commonwealth and intentionally target Plaintiffs here, whom Defendants know and knew to be residents of this forum. Moreover, especially if Defendants were as small as they claim to be,

they should welcome the opportunity to litigate in this District. This District will likely resolve this dispute faster than the Central District of California and at lesser cost to all parties (Liedtke Decl. ¶¶ 36-38). The Business Travel News 2016 Corporate Travel Index for example ranks Los Angeles, Defendants desired venue as the seventh most expensive US city to stay in. Conversely Pittsburgh is ranked No. 34 of 50 in its Hotel Cost Breakdown. Based on this Business Travel News study, hotel prices are on average 20% cheaper in Pittsburgh than in Los Angeles. (Liedtke Decl. ¶¶ 36-38, Exhibit B-9 thereto).

Factors four and five are only applicable to the extent witnesses may actually be unavailable for trial in one of the forums or to the extent files could not be produced. Defendants do not claim that this is the case and doing so would strain credulity. That said, as outlined above, the critical evidence is located in this District anyway.

Hence, the private *Jumara* factors weigh in Plaintiffs' favor or are inapplicable. The same is true for the public factors.

While Defendants claim that the Central District of California would be better suited to enforce an injunction, there can be no question that this Court would be equally well equipped. More importantly, Defendants are set to exhibit at, not just attend, the American Water Works Association's Annual Conference and Exposition in Philadelphia in June 2017. This Court is ideally positioned with respect to granting related injunctive relief.

As outlined above, most pertinent evidence for all parties is located in this District making trial here easier and more efficient. Similarly, litigating in this District is significantly less expensive than doing so in Defendants' desired forum. As per the above referenced Business Travel News 2016 Corporate Travel Index, hotel prices in Los Angeles, the seventh most expensive city in the US as far as hotel prices are concerned, are 20% more expensive than in

Pittsburgh. *See* Liedtke Decl. ¶¶ 36-38, Exhibit B-9 thereto. This financial burden associated with Defendants' desired venue does not account for the many other logistic drawbacks. Los Angeles, for example, has been ranked as the worst metropolitan area in terms of traffic repeatedly. Pittsburgh and Allegheny counties do not even make this ranking. *See* Liedtke Decl. ¶¶ 39-40 Exhibit B-10 thereto. The second public interest factor thus also weighs in favor of Plaintiffs' choice to litigate here.

As for the third public interest factor, it goes without saying that all courts in the United States are incredibly busy and burdened by full dockets. However, the most recent Federal Judicial Caseload Statistics show that in 2015 14390 new civil actions were filed in the Central District of California and 9922 civil actions were pending in that court. (Liedtke Decl. ¶¶ 41-42 and Exhibit B-11 thereto) In the same time frame 2624 civil actions were filed in this Court and 1827 civil actions were pending. These are differences of 448% and 443% respectively. The Central District of California is clearly more congested than this Court. Litigating there would result in a less efficient resolution of this matter. This third factor therefore weighs very strongly in favor of litigation in this Court.

The local interest in deciding local interests at home also pulls in favor of litigating in this Court. In addition to the arguments put forth above, Plaintiffs note that Defendants blatant acts of trademark infringement harm Prominent in this District. Prominent Systems know that Prominent is located here. Prominent is set to double down on their activities by bringing it to this Commonwealth in little over half a year from today which will likely include the infringing marketing materials in which Prominent Systems uses the not just a confusingly similar mark (such as its name Prominent Systems) but the identical mark (PROMINENT) for identical goods and services.

The fifth public interest factor is inapplicable. Factor six once again strongly weighs in favor of litigation in this District because half of all causes of action raised in the Complaint are based on Pennsylvania law. This Court is clearly more familiar with these important claims than a California court could ever be.

Although Defendants did not discuss *Jumara* or the test set forth by the Third Circuit therein, it is clear that under *Jumara* transfer is improper since this Court is best suited to adjudicate the case at bar.

## IV. CONCLUSION

Prominent has made more than a *prima facie* case for personal jurisdiction and Defendants do not try very hard to present a case, not to mention a compelling one, as to why exercising jurisdiction would be unreasonable. Venue is simply proper under 28 U.S.C. § 1391. Prominent's choice of forum is presumed to be appropriate, and Defendants do not make any showing let alone a "strong showing" as to why the Central District of California is clearly preferable. Therefore, Plaintiffs respectfully request that the motions be denied.

Dated: December 27, 2016    Respectfully submitted,

_____

34

Christian W. Liedtke, Esq. *(CA 297523)*
acuminis pc
3420 Bristol St, 6th Floor
Costa Mesa, CA 92626
(949) 698-7840


*Attorney for Plaintiffs Prominent GmbH, Prominent Systems spol. s r.o., and Prominent Fluid Controls, Inc.*

## PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen (18) years and employed in the County of Orange, State of California. I am a member of the State Bar of California and of the above entitled Court. My office address is 3400 Bristol Street, 6th Floor, Costa Mesa, CA 92626.

On December 27, 2016, I served the following document (attached hereto):

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(3) AND TO TRANSFER PURSUANT TO 28 U.S.C. §§ 1404, 1406 AND 1631**

**(XX)   VIA CM/ECF FILING SYSTEM.** The undersigned hereby certifies that he caused a copy of the foregoing document(s) to be filed with the clerk of the U.S. District Court, Eastern District of California, using the CM/ECF filing system, which caused a copy to be electronically mailed to the following CM/ECF Participant(s) on December 27, 2016:

ALAN J. ROMERO
Romero Law, APC
80 S. Lake Avenue, Suite 880
Pasadena, CA 91101-2672

Executed on December 27, 2016, at New York, New York

_____
Christian W. Liedtke