## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PROMINENT GmbH, PROMINENT
SYSTEMS, spol. s r.o., and PROMINENT
FLUID CONTROLS, INC.,

    Plaintiffs,

        v.

PROMINENT SYSTEMS, INC.,
PROMINENT SUPPLIES, INC., and
KY TRAN,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.  2:16-cv-01609

Magistrate Judge Lisa Pupo Lenihan

ECF Nos. 21 & 23

## OPINION

<u>LENIHAN</u>, M.J.

Currently before the Court for disposition are the Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) (ECF No. 21), and the Motion to Transfer Pursuant to 28 U.S.C. §§ 1404, 1406, and 1631 (ECF No. 23), filed by Defendants Prominent Systems, Inc., Prominent Supplies, Inc., and Ky Tran (collectively "Defendants").  Plaintiffs, Prominent GmbH, Prominent Systems, spol. s r.o., and Prominent Fluid Controls (collectively "Prominent" or "Plaintiffs"), assert claims for the alleged willful and blatant infringement of their famous federally registered PROMINENT trademarks, and for trademark dilution and false designation of origin and unfair competition, under federal and state law, against Defendants.  For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion to dismiss for lack of personal jurisdiction.  Defendants' motion to dismiss

under Rule 12(b)2) will be granted as to Defendants Prominent Supplies, Inc. and Ky Tran, and will be denied as to Defendant Prominent Systems, Inc. The claims against Defendants Prominent Supplies and Ky Tran will be dismissed without prejudice. In addition, the Court will deny Defendants' motion to dismiss under Rule 12(b)(3) for improper venue as to Defendant Prominent Systems, and will deny said motion as moot with regard to Defendants Prominent Supplies and Ky Tran. Finally, the Court will deny Defendants' motion to transfer.

## I.  FACTUAL BACKGROUND[1] & PROCEDURAL HISTORY

According to the Complaint, Prominent is a global leader in all aspects of water treatment solutions, and has used its PROMINENT marks for over 50 years to brand its acclaimed and market leading products. (Compl., ¶2, ECF No. 1.) A family owned and operated company with 56 global subsidiaries, Prominent employs over 2,100 persons worldwide, 150 of which are located in Pittsburgh, Pennsylvania, which is the location of its headquarters and principal place of business in the United States. (*Id.* at ¶¶ 3, 7, 13.)

Plaintiff Prominent GmbH is a limited liability company organized and existing under the laws of the Federal Republic of Germany, with an office and principal place of business in Heidelberg, Germany. (*Id.* at ¶14.) At all material times, Prominent GmbH is and was engaged in the business of developing, manufacturing, distributing, marketing, maintaining, and providing high quality water treatment and water

---

[1] Only those facts relevant to the pending motions are set forth in this Opinion.

disinfection solutions, as well as dosage pumps, metering pumps and related technology including, but not limited to, dry feeders. (*Id.*)

Plaintiff Prominent Systems spol. s r. o. is a limited liability company organized and existing under the laws of the Czech Republic, with an office and principal place of business in Blovice, Czech Republic. (*Id.* at ¶ 15.) Prominent Systems spol. s r. o. is a wholly owned subsidiary of Prominent GmbH and is engaged in the business of producing water treatment systems and components thereof. (*Id.*)

Plaintiff Prominent Fluid Controls, Inc., is a Pennsylvania corporation with its headquarters in Pittsburgh, Pennsylvania. (*Id.* at ¶ 16.) At all material times, Prominent Fluid Controls is and was a wholly owned subsidiary of Prominent GmbH and is Prominent's exclusive distributor in the United States. (*Id.*) Prominent Fluid Controls is engaged in the same business activities as those stated for Prominent GmbH, and operates under the name Prominent, which is protected by federal and state trademark registrations. (*Id.*)

Defendant Prominent Systems, Inc. is a California corporation with a principal place of business located in the City of Industry, California. (*Id.* at ¶ 17; Decl. of Ky Tran ("Tran Decl.") at ¶2, ECF No. 21-1.) Prominent Systems manufactures Granular Activated Carbon for use in its filter media products, which it markets for water treatment and environmental purification, and offers a wide range of services and applications involving its Carbon product. (Compl., ¶ 17 & Ex. 7 thereto, ECF No. 1-1 at 63-79.)

Plaintiffs allege that Prominent Systems targets a variety of industries including companies in the food and beverage, pharmaceutical, and public sectors. (Compl., ¶ 17 & Ex. 7 thereto, ECF No. 1-1 at 79.) Plaintiffs further allege that the activities of Prominent Systems target Pennsylvania primarily in two ways—Prominent Systems: (1) avails itself of Pennsylvania's PennBid System, where private companies can bid on public sector solicitations from more than 450 Pennsylvania government agencies and municipalities; and (2) has and does conduct business throughout the United States via various websites, including but not limited to, www.prominentinc.com and www.prominentsupplies.com. (Compl., ¶ 17.)[2] Defendant Tran concedes that Prominent Systems uses Pennsylvania's PennBid bidding system, and that it has shipped goods to Pennsylvania. (Supp. Decl. of Ky Tran ("Supp. Tran Decl.") at ¶¶ 14-15, ECF No. 30-1 at 3.) However, according to Defendant Tran, there is no way to place an order directly from the Prominent Systems website. (Id. at ¶ 18.)

Defendant Prominent Supplies, Inc. is a California corporation with its principal place of business located in San Gabriel, California,[3] and is primarily engaged in project

_____

[2] Plaintiffs also proffer Prominent Systems's anticipated participation as an Exhibitor in the 2017 Annual Conference of the American Water Works Association from June 11-14, 2017 in Philadelphia, Pennsylvania, to support their position that Defendants targeted Pennsylvania. (Compl., ¶ 17.) However, in their Reply Brief, Defendants stipulate and agree to not attend that conference in any capacity, and attach the Supplemental Declaration of Ky Tran in support. *See* Defs.' Reply Br. at 1-2 (ECF No. 30); Supp. Decl. of Ky Tran at ¶ 2 (ECF No. 30-1).

[3] Plaintiffs allege that they believe that Prominent Supplies also has a principal place of business at the same location in the City of Industry, California, as Prominent Systems. (Compl., ¶ 18.) The president of Prominent Supplies, I. Nyoman Scorpio, also states that the principal place of business of Prominent Supplies is located in the City of

management services.  (Compl., ¶ 18 & Ex. 10 attached thereto, ECF No. 1-1 at 89; Supp. Tran Decl. at ¶ 7; Decl. of I. Nyoman Scorpio ("Scorpio Decl.") at ¶ 3, ECF No. 23-1.)  I. Nyoman Scorpio is the president and sole shareholder of Prominent Supplies.  (Supp. Tran Decl. at ¶ 6; Scorpio Decl. at ¶1.)   Prominent Supplies also owns and operates the website available at www.prominentsupplies.com.[4]  (Compl., ¶ 18.)   Unlike Prominent Systems, Prominent Supplies does not use Pennsylvania's PennBid bidding system nor has it engaged in any bidding activity in Pennsylvania.  (Supp. Tran Decl. at ¶¶ 14, 16.)

Defendant Ky Tran resides in the State of California and serves as the President of Prominent Systems.  (Compl. at ¶ 19.) In such capacity, Defendant Tran directs some, but not all, of the business and commercial activities of Defendant Prominent Systems, as he is not the sole officer of the corporation.  (*Id.*; Supp. Tran Decl. at ¶ 12.)   It appears, however, that he does not direct any of the business and commercial activities of Prominent Supplies as that business is the exclusive concern of the president and sole shareholder of Prominent Supplies, I. Nyoman Scorpio.  (Supp. Tran Decl. at ¶¶ 2 & 6; Scorpio Decl. at ¶1.)

---

Industry, California.  (Scorpio Decl. at ¶ 3.)  However, in his supplemental declaration, Ky Tran states that the only principal place of business for Prominent Supplies is the East Greenwood Avenue address in San Gabriel, California, which is the personal residence of the president of Prominent Supplies, Mr. Scorpio.   (Supp. Tran Decl. at ¶ 7.)  Mr. Tran further states that Prominent Supplies is allowed to use the address of Prominent Systems to protect the privacy of Mr. Scorpio by not making his home address public.  (*Id.*)

[4] When visited on 2/23/17, the home page indicates that the website is "under construction."

According to Defendant Tran, Prominent Systems and Prominent Supplies do not share common officers or directors, do not own each other's stock, do not consolidate tax returns or financial records, and do not exercise any control over each other, but are independent, separately existing entities with divergent business purposes. (Supp. Tran Decl. at ¶¶ 3-5, 9-10.) Prominent Supplies does not utilize any employee of Prominent Systems; Mr. Scorpio, as a non-officer employee of Prominent Systems, provides general marketing of goods and services for Prominent Systems, largely in the Southern California area. (Supp. Tran Decl. at ¶ 3; Scorpio Decl. at ¶1.) Prominent Supplies does not display any signage at the City of Industry, California headquarters of Prominent Systems. (Supp. Tran Decl. at ¶11.)

Defendant Tran declares that neither he nor Prominent Systems has ever: (1) attended any trade show in Pennsylvania (Supp. Tran Decl. at ¶ 19); (2) Defendant Tran further declares that (1) the heavy machinery owned and/or operated by Prominent Systems, which is the subject of this lawsuit, is primarily located in California, Washington, and Texas, and none is located in Pennsylvania (*id.* at ¶¶ 21-22); (2) neither he, in his individual capacity, nor Prominent Supplies has ever advertised in Water Quality Products magazine, but Prominent Systems does advertise in that publication (*id.* at ¶ 26); (3) he personally has no business relationships, operations, or endeavors in Pennsylvania and has not ever been within the borders of Pennsylvania (Tran. Decl. at ¶¶ 3-4); (4) he has no employees residing or domiciled in Pennsylvania, and no offices or comparable facilities, telephone listings, or mailing address in Pennsylvania (*id.* at ¶ 9); (5) he has no bank accounts or other tangible

6

personal or real property in Pennsylvania (*id.* at ¶11); and (6) he has never transacted business in, or set foot within the borders of, Pennsylvania (*id.* at ¶14).

With regard to Prominent Systems, Defendant Tran states that: (1) it is not incorporated in Pennsylvania (*id.* at ¶6); (2) none of its employees, officers or directors reside or are domiciled in Pennsylvania (*id.* at ¶¶ 7-8); (3) it has no branch office or comparable facilities, telephone listings, or mailing address in Pennsylvania (*id.* at ¶8); (4) it has no bank accounts or other tangible personal or real property in Pennsylvania (5) none of its employees work in Pennsylvania (*id.* at ¶13); and (6) none of its board of directors or shareholders meetings have been held in Pennsylvania, and none of its officers or directors has attended business conferences or similar functions within Pennsylvania (*Id.* at ¶ 12).

As to Defendant Prominent Supplies, Mr. Scorpio declares that : (1) it is not incorporated or qualified to do business in Pennsylvania, and has no subsidiaries incorporated or qualified to do business in Pennsylvania (Scorpio Decl. at ¶4); (2) none of its employees, officers or directors reside or are domiciled in Pennsylvania (*id.* at ¶¶ 5-6); (3) it has not contracted with persons residing in Pennsylvania to act on its behalf with respect to marketing, distributing or servicing any of its goods or products (*id.* at ¶ 6); (4) it has no branch office or comparable facilities, telephone listings, or mailing address in Pennsylvania (*id.* at ¶ 7); (5) it has never transacted business in Pennsylvania (*id.* at ¶ 14); (6) it has no bank accounts or other tangible personal or real property in Pennsylvania (*id.* at ¶ 8); (7) it does not direct any of its advertising specifically towards Pennsylvania residents, nor does it advertise in any publications that are directed

primarily towards Pennsylvania residents (*id.* at ¶ 9); (8) none of its board of directors or shareholders meetings have been held in Pennsylvania, and none of its officers or directors has attended business conferences or similar functions within Pennsylvania (*id.* at ¶ 10); (9) its acts or omissions for which Plaintiffs seek to hold it liable in this action all occurred outside Pennsylvania (*id.* at ¶11). Mr. Scorpio, who serves as president of Prominent Supplies, declares that he personally has no business relationships, operations, or endeavors in Pennsylvania and has never stepped foot in Pennsylvania. (Scorpio Decl. at ¶¶ 12-13.)

Defendants' California business operations, officers, counsel, witnesses, and evidence (heavy equipment) are all located within 100 miles of the Central District of California. (Tran Decl. at ¶¶ 23, 27-30, 32-33; Supp. Tran Decl. at ¶¶ 24-25; Scorpio Decl. at ¶¶ 21, 23, 27-30, 32-33.)

After failed attempts to resolve the trademark dispute with Defendants out of court, Plaintiffs instituted this action on October 21, 2016. In response, Defendants filed a motion to dismiss pursuant to Rules 12(b)(2) and (b)(3) (ECF No. 21), as well as a motion to transfer the case to the Central District of California (ECF No. 23), and supporting briefs (ECF Nos. 22 & 24). Plaintiffs filed a timely brief in opposition to the motions (ECF No. 29), to which Defendants filed a reply brief (ECF No. 30). As the motions to dismiss and/or transfer have been fully briefed, they are now ripe for disposition.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss

#### 1.    FED. R.CIV. P. 12(b)(2)

In responding to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants, by producing affidavits or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)); *see also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Where, as here, an evidentiary hearing is not held on the 12(b)(2) motion, the plaintiff need only demonstrate a prima facie case of personal jurisdiction. *Metcalfe*, 566 F.3d at 330 (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (other citation omitted).

In deciding a Rule 12(b)(2) motion, although the court must accept the plaintiff's allegations as true and resolves all doubts in its favor, *D'Jamoos*, 566 F.3d at 102 (citing

*Miller Yacht Sales, supra*), plaintiff may not rest solely on the pleadings to satisfy its burden of proof, *see Pinker*, 292 F.3d at 368; *Carteret Sav. Bank,* 954 F.2d at 146. Rather, the plaintiff must present evidence that demonstrates a prima facie case for the exercise of personal jurisdiction. *See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). If the plaintiff succeeds, the burden then shifts to the defendant to demonstrate that an exercise of personal jurisdiction by the forum state would violate due process, i.e., the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. *Miller Yacht Sales,* 384 F.3d at 97 (citing *Burger King,* 471 U.S. at 476).

### 2.    Fed. R. Civ. P. 12(b)(3)

In this circuit, the party challenging venue has the burden of proving that venue in the selected judicial district is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) (citation & footnote omitted); see also *Manning v. Flannery*, Civ. A. No. 09-3190, 2010 WL 55295, at *4 & n. 4 (E.D.Pa. Jan. 6, 2010) (citing *Myers, supra*) (other citations & footnote omitted). In deciding a motion to dismiss and/or transfer for improper venue under Rule 12(b)(3), the Court must generally accept as true the allegations in the pleadings. *Heft v. AAI Corp.*, 355 F.Supp. 2d 757, 762 (M.D.Pa. 2005) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Myers*, 695 F.2d at 724) (footnote omitted). In addition, "[t]he parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft*, 355 F.Supp. 2d at 762 (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n. 1 (3d Cir.1992);

*Myers*, 695 F.2d at 724).  In either event, the Court is required to view the facts in the light most favorable to the Plaintiff.  *Id.*  (citing *Carteret* and *Myers*, *supra*).

**B.**     **Motion to Transfer**

The district court is vested with broad discretion in determining whether transfer of venue is appropriate.  *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973) (citations omitted); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

**III.**     **DISCUSSION**

**A.**     **Personal Jurisdiction**

In their reply brief, Defendants concede that this Court likely possesses specific personal jurisdiction over Prominent Systems.[5]  Defs.' Reply Br. at 8 (ECF No. 30).  In light of this concession, the Court need only determine whether personal jurisdiction exists over the remaining defendants—Prominent Supplies and Ky Tran.

At the outset, the Court notes that Plaintiffs have not delineated the contacts of Prominent Supplies and Ky Tran that were purposefully directed to the forum, but rather, rely on the alleged contacts of Prominent Systems or the Defendants collectively, which they claim show purposeful availment.  This infirmity is fatal to establishing the Court's specific personal jurisdiction over Prominent Supplies and Ky Tran.

In order for personal jurisdiction to exist over Defendants in the Western District of Pennsylvania, each Defendant must have certain "minimum contacts" with the

---

[5] Defendants' concession is supported by Prominent Systems' admitted use of the PennBid system to solicit customers in Pennsylvania and shipment of goods to Pennsylvania.  Supp. Tran Decl. ¶¶ 14-15.  Moreover, Defendants' reply brief focuses on Plaintiffs' failure to show sufficient minimum contacts with Pennsylvania only with regard to Prominent Supplies and Ky Tran.

forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[6] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)) (other citations omitted). The minimum contacts requirement serves the purpose of "protect[ing] the defendant against the burdens of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and connection with the forum State [be] such that [a defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 297 (1980) (citations omitted). This framework enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297. Thus, a plaintiff cannot unilaterally create the necessary contacts between the defendant and the forum; rather, "minimum contacts" can arise only by "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction. Specific jurisdiction applies where the cause of action is related to or arises from the defendant's contacts with the forum, *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker,* 292 F.3d at 368), while general jurisdiction

---

[6] The Due Process standard must be applied to each defendant. *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 145 n.6 (3d Cir. 1992) (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)).

applies where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action, *Pennzoil Prods. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (citation omitted). In the instant matter, Plaintiffs submit that personal jurisdiction exists over Defendants based solely upon specific jurisdiction.

Specific personal jurisdiction requires the Court to conduct a three-part test. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Initially, the court must determine whether the defendant has "'purposefully directed'" its activities toward the forum state. *Id.* (quoting *Burger King Corp.*, 471 U.S. 462 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (whether "minimum contacts" exist requires the court to examine "the relationship among the defendant, the forum, and the litigation."))). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408, 414 (1984); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007)). Finally, if the plaintiff has established the first two elements, only then does the court proceed to the third part of the inquiry–whether the defendant's contacts with the forum state are such that maintenance of the action "'does not offend traditional notions of fair play and substantial justice.'"[7] *World-Wide Volkswagon*, 444 U.S. at 292 (citing *Int'l Shoe*, 326 U.S. at

---

[7] With regard to the third prong of the specific jurisdiction analysis, the court should consider the following factors: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide*

316); *D'Jamoos,* 566 F.3d at 102. In this regard, the court of appeals observed:

> The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. [at 253]. To meet this requirement, the defendant's physical entrance into the forum is not necessary. *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir.1993). A defendant's contacts, however, must amount to "a deliberate targeting of the forum." *O'Connor,* 496 F.3d at 317. The "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. *Hanson,* 357 U.S. at 253.

*D'Jamoos,* 566 F.3d at 102-03. The inquiry under *D'Jamoos* must be applied to each claim and to each defendant independently. *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007) (citing *Remick v. Manfredy,* 238 F.3d 248, 255-56 (3d Cir. 2001)). Plaintiffs bear the burden of proof on the first two elements, and only if Plaintiffs meet this burden does the burden shift to Defendants to prove the third element. *Burger King,* 471 U.S. at 476-78.

The court of appeals has applied the *D'Jamoos* test to defendants who are not being sued for intentional torts. *See O'Connor,* 496 F.3d at 317 & n. 2. Where the plaintiff has brought suit against a defendant based on an intentional tort, the court of appeals has applied the *Calder* effects test. *Id.* at 317 n. 2. Here, Plaintiffs argue that specific jurisdiction exists against Prominent Supplies and Ky Tran under both tests.[8]

---

*Volkswagen,* 444 U.S. at 292).

[8] Although the specific jurisdiction inquiry must be applied to each claim separately, Plaintiffs' analysis does not appear to differentiate between the intentional torts and

As explained below, Plaintiffs have failed to establish that personal jurisdiction exists over Prominent Supplies and Ky Tran in this District under any applicable standard.

### 1. *D'Jamoos* Test

Under the first prong of the *D'Jamoos* test, Plaintiffs must show that Prominent Supplies and Ky Tran purposefully directed their activities at the forum. Thus, the Court will examine the alleged contacts of each Defendant as supported by Plaintiffs' and Defendants' affidavits and exhibits.

### (a) Prominent Supplies

The contacts of Prominent Supplies identified by Plaintiffs, which are alleged to be purposefully directed to Pennsylvania, consist merely of (1) Prominent Supplies' allegedly interactive website, www.prominentsupplies.inc., (2) the alleged use of the PROMINENT trademark on Prominent Supplies' website, and (3) the use of a metatag for the word "Prominent". However, none of the exhibits provided by the parties shows that any of these "contacts" is purposefully directed towards Pennsylvania.

Plaintiffs submit that Prominent Supplies' website, while not interactive, is sufficiently commercial to show contacts with Pennsylvania, such that it falls in the middle of the sliding scale set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997).[9] Plaintiffs' argument falls short of the mark.

---

non-intentional tort claims, other than to summarily argue (in the alternative) that specific jurisdiction also exists over Defendants under the *Calder* effects test. (Pls.' Br. at 27.)

[9] The *Zippo* court explained the sliding scale as follows:

Nevertheless, our review of the available cases and materials

In *Metcalfe v. Renaissance Marine, Inc.*, the court of appeals relied on its holding in *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003), in which it had articulated the controlling principle in determining whether websites are sufficiently interactive/commercial to show contacts directed to the forum:

> As *Zippo [Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997)]* and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state,

---

reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp., v. King*, 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996).

952 F. Supp. at 1124 (footnote omitted).

> knowingly interacting with residents of the forum state via
> its web site, or through sufficient other related contacts.

566 F.3d 324, 340 (3d Cir. 2009).  When the Court examines Prominent Supplies' website and the exhibits depicting the website, it is clear that it lacks the necessary level of interactivity and commercial activity to establish sufficient minimum contacts for personal jurisdiction purposes.

In the Court's view, Prominent Supplies' website is passive rather than interactive, as it does little more than make contact information available to those who are interested in purchasing or finding out more about its cleaning products.  The one-page website states that its cleaning products are available for public purchase either at its store in California, or by calling a telephone number in California.  (Pls.' Ex. 10 to Compl., ECF No. 1-1 at 90.)[10]  The website also provides the following email address: info@Prominentsupplies.com.   No other information is provided on Prominent Supplies' website, not even a description of the cleaning products available for purchase.   Thus, it is clear that visitors to the website cannot place orders over the internet, but instead, must visit or call the store in California.   Since the website is passive, Plaintiffs have not shown nor can they show that the website generated any sales or shipments of Prominent Supplies' cleaning products, let alone sales or shipments to customers in Pennsylvania.

_____

[10] The Court has relied on the webpage provided by Plaintiffs in Exhibit 10 to their Complaint, because when the Court recently visited Prominent Supplies' website, it was "under contruction."

Plaintiffs attempt to get around this infirmity by arguing that Defendants employ metatags and search engine optimization techniques to specifically target Pennsylvania consumers searching for PROMINENT on Google or other search engines to lure them to Defendants' websites (citing Liedtke Decl., ¶¶ 20-26, Ex. B to Pls.' Br. in Opp'n (citing Ex. B-3 attached thereto)). However, Liedtke's declaration and supporting documentation do not show that the use of metatags and search engine optimization techniques specifically targeted Pennsylvania consumers. Rather, Liedtke states that metatags are designed to induce internet search engines to display a website more prominently than others. This statement only supports the conclusion that *any* consumers (nationally or globally) who enter a search inquiry containing the word "PROMINENT" will likely see Defendants' websites listed more prominently in their search results. Exhibit 3 to Liedtke's declaration does not support the conclusion that the use of metatags targets consumers in Pennsylvania.

Plaintiffs also advance the argument that Defendants' use of their PROMINENT trademark on Defendants' websites targeted Pennsylvania consumers. Plaintiffs fail to provide any explanation as to how this establishes that Prominent Supplies was targeting Pennsylvania consumers, and the Court fails to see how merely displaying Plaintiffs' trademark on Defendants' websites would purposefully target consumers in Pennsylvania. Such a relationship is tenuous at best; due process requires more.

In addition, the president of Prominent Supplies, I. Nyoman Scorpio, stated in his declaration that Prominent Supplies has never transacted business in Pennsylvania,

nor has it ever contracted with persons residing in Pennsylvania to transact business on its behalf. Scorpio Decl. ¶¶ 6, 14.

Thus, Plaintiffs have failed to produce any evidence that Prominent Supplies' website targets Pennsylvania customers. If Prominent Supplies' website can be regarded as targeted at all, it is targeted at anyone anywhere in the world who is interested in purchasing its cleaning products. If that targeting is sufficient, Prominent Supplies' website has subjected it to personal jurisdiction anywhere in the world that a potential customer resides, a result that is inconsistent with the court of appeals' holding in *Toys "R" Us*.

To the extent that Plaintiffs attempt to rely on Defendants' participation in the 2016 Annual Conference & Exhibition of the American Water Works Association, based on the attendee list showing that more than 300 of the attendees were from Pennsylvania (Ex. B-5 attached to Liedkte Decl., ECF No. 29-2 at 139-144), their reliance is misplaced. First of all, Plaintiffs fail to provide any proof that representatives from Prominent Supplies or Ky Tran attended that conference, and Mr. Tran states that he never attended any trade shows in Pennsylvania (Supp. Tran Decl. ¶19). Rather, Plaintiffs offer the declaration of Michael Weber, the general manager of Prominent Fluid Controls. Mr. Weber states that he visited Defendants' exhibitor booth at the 2016 conference and talked with *unidentified* "employees" of Defendants, and that his customers had mistakenly visited "Prominent Systems' tradeshow booth when they were looking for Prominent's booth." (Weber Decl. ¶¶ 16-17, Ex. A to Pls.' Br. in Opp'n (ECF No. 29-1 at 1-4).) Weber's statements do not show that representatives from

Prominent Supplies or Ky Tran attended that conference. Nonetheless, even if all of the Defendants had attended the 2016 conference with attendees from Pennsylvania, that alone does not constitute purposeful contacts with Pennsylvania, as the 2016 conference took place in Chicago, Illinois.[11] *O'Connor*, 496 F.3d at 317 (citing *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542-43 (3d Cir. 1985)) ("contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself.").[12]

Perhaps realizing the insufficiency of these contacts, Plaintiffs attempt to circumvent the minimum contacts requirement by arguing that Prominent Supplies is the alter ego of Prominent Systems. As such, Plaintiffs contend that the acts of Prominent Systems are also attributable to Prominent Supplies for purposes of establishing the latter's personal jurisdiction. This argument also fails, as the undisputed evidence here does not support a finding that Prominent Supplies is the alter ego of Prominent Systems.

A plaintiff may rely upon an alter ego theory to prove personal jurisdiction over one corporation, based its relationship with another, related entity—typically a parent company and its subsidiary—that is subject to personal jurisdiction in the particular forum. *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598-99 (W.D.Pa.

---

[11] *See* https://www.awwa.org/store/productdetail_event.aspx?productid=52745450, last visited on March 22, 2017.

[12] Similarly, Plaintiffs' argument that "Defendants have advertised in Water Quality Products Magazine does not prove that Prominent Supplies targeted customers in Pennsylvania. (Liedtke Decl. ¶¶ 32-35.) The advertisement contained in Exhibit B-7 is for Prominent Systems and does not mention Prominent Supplies anywhere in the ad. (Ex. B-7, ECF No. 29-2 at 239.) Nor does the Water Quality Products Magazine Media Kit provide any evidence of whether any of its 25,000 subscribers are Pennsylvania residents. (Ex. B-8, ECF No. 29-2 at 241-48.)

2009)(citing *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH,* 360 F. Supp. 2d 665, 675 (E.D.Pa. 2005)) (footnote omitted).  In determining whether personal jurisdiction may be constitutionally exercised under this theory, the courts have noted that "[t]he degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship."  *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig. v. Enter. Rent-A-Car Co.,* 735 F. Supp. 2d 277, 318 (W.D. Pa. 2010) (citation & internal quotation marks omitted); *Chocolate Confectionary,* 674 F. Supp. 2d at 598 (citations omitted).  In particular, the courts have considered the following ten factors in determining whether more intrusive control is present:

> (1) the parent owns all or a significant majority of the subsidiary's stock,
>
> (2) commonality of officers or directors exists between the two corporations,
>
> (3) the group possesses a unified marketing image, including common branding of products,
>
> (4) corporate insignias, trademarks, and logos are uniform across corporate boundaries,
>
> (5) group members share employees,
>
> (6) the parent has integrated its sales and distribution systems with those of its subsidiaries,
>
> (7) the corporations exchange or share managerial or supervisory personnel,
>
> (8) the subsidiary performs business functions that would ordinarily be handled by a parent corporation,
>
> (9) the parent uses the subsidiary as a marketing division or as an exclusive distributor, and

> (10) the parent exercises control or provides instruction to the subsidiary's officers and directors.

*Chocolate Confectionary*, 674 F. Supp. 2d at 598 (quoting *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538,, 569-70) (M.D.Pa. 2009)) (other citations omitted). The court further opined that "[n]o one aspect of the relationship between two corporations unilaterally disposes of the analysis, and . . . any evidence bearing on the corporations' functional interrelationship" may be considered. *Id.* However, the *sine qua non* of an alter ego relationship is daily, operational control. *Id.* at 600 (citing *Poe v. Babcock Int'l plc*, 662 F. Supp. 4, 6 (M.D.Pa. 1985)).

Plaintiffs predicate their alter ego argument upon five factors.[13] First, Plaintiffs submit that Prominent Systems and Prominent Supplies share common officers and directors, based on Mr. Scorpio's statement that he is the President of Prominent Supplies and the marketing director of Prominent Systems (Scorpio Decl., ¶ 1), and because his declaration is made concerning both Prominent Supplies and Prominent Systems. This is a misrepresentation of Defendants' evidence. Mr. Scorpio serves as the marketing director of Prominent Systems, not on its board of directors; he is responsible for general marketing of goods and services of Prominent Systems mainly in the southern California area. (*Id.*; Supp. Tran Decl. ¶ 3.) Moreover, Defendants' declarations indicate that the two companies do not share officers and directors. (Supp.

---

[13] It should be noted that in attempting to establish that Prominent Supplies is the alter ego of Prominent Systems, Plaintiffs rely primarily on the declarations of Ky Tran and Mr. Scorpio.

Tran Decl. ¶ 3.)  Moreover, it is not reasonable to infer that Prominent Systems exercises control of the daily business operations of Prominent Supplies merely because Mr. Scorpio's declaration includes information regarding both companies.  Mr. Scorpio possesses personal knowledge of Prominent Systems based on his position there as marketing director.  Plaintiffs do not explain how this shows the requisite control for establishing alter ego.

Second, Plaintiffs submit that the two companies share common employees, based on (1) the declaration of Mr. Scorpio (¶28) and Mr. Tran (¶¶ 13, 28), in which they state, respectively, that Prominent Supplies and Prominent Systems are "a small company with only 22 employees, 18 of whom are located in the Central District of California[;]" and (2) acceptance of service of process by the same "employee" on behalf of both companies.  While Plaintiffs accurately convey the statements of Messrs. Tran and Scorpio, subsequently, Defendants submitted a supplemental declaration of Ky Tran (ECF No. 30-1 at 2-5) in support of their reply brief, which further elucidates on the "shared employees" allegation.  Mr. Tran clarifies that Prominent Supplies does not utilize any employee of Prominent Systems, and that Mr. Scorpio is the sole shareholder of Prominent Supplies and serves as an officer of that corporation, not as an employee. (Supp. Tran Decl. ¶ 6.)  Even if the Court construes these statements in favor of Plaintiffs and finds that the two companies shared employees, this factor alone does not establish that Prominent Supplies is the alter ego of Prominent Systems.

Next, Plaintiffs contend that the two companies share a common business purpose because the project management services mentioned in Mr. Scorpio's

declaration compliment the activities of Prominent Systems. This appears to be pure speculation on Plaintiffs' part, as they have not pointed to any basis in the record to support this conclusion. Rather, Prominent Supplies' website indicates that its business involves the sale of cleaning supplies and janitorial products (ECF No. 30-1 at 59), and its Statement of Information provided to the California Secretary of State, as recently as 6/13/16, indicates that the business of Prominent Supplies is wholesale and retail medical supplies and disposable items (ECF No. 30-1 at 55-56). On the other hand, Prominent Systems is primarily engaged in the business of bulk sales of carbon filtration media to corporate buyers. (Tran Decl. ¶ 2.) The Court cannot not reasonably infer from these documents that the two companies share a common business purpose.

Fourth, Plaintiffs submit that Defendants make common use of business equipment and office supplies, because they utilize the same telephone number and same principal place of business. Again, Plaintiffs are asking the Court to make an inference here that is not reasonable based on the evidence produced by Defendants. The California Secretary of State records show different business addresses for Prominent Systems and Prominent Supplies. *See* Exs. 5 & 10 attached to Compl.; Ex. 11 attached to Defs.' Reply Br. (ECF No. 30-1 at 55-56). A review of the evidence reveals that Prominent Supplies' use of Prominent System's telephone number and address is limited to inquiries from Prominent Supplies' website. As Mr. Tran explained in his supplemental declaration, the principal place of business listed for Prominent Supplies with the California Secretary of State is Mr. Scorpio's personal residence; as such, for privacy reasons, Prominent Systems allows Prominent Supplies to use the former's

address. (Supp. Tran Decl. ¶6.) Such limited use of Prominent Systems' address and telephone number alone does not raise a reasonable inference that the two companies shared business equipment and office supplies, especially considering that the companies appear to be engaged in unrelated businesses.

Finally, Plaintiffs submit that Defendants use the same branding/logo, because the only visible logo/advertising on Defendants' building is the Prominent Systems' logo (Compl., ¶ 40), and the logos of the two companies are one in the same upon visual comparison. This argument is predicated partially on the assumption that the two companies share Prominent Systems' principal place of business, located at 13095 E. Temple Avenue, City of Industry, California. But other than showing that Prominent Supplies lists that address (for privacy purposes) on their website for obtaining more information about purchasing its products, the record does not contain any evidence that Prominent Systems is controlling the daily business operations of Prominent Supplies from the 13095 E. Temple Avenue address. Moreover, Mr. Tran states that Prominent Supplies does not display any signage at Prominent Systems' principal place of business. (Supp. Tran Decl. ¶ 11.) As to the branding/logo, a visual inspection of the logos reveals that the same figurative element appears in both, but the names appearing with the figurative element are different (PROMINENT Systems, Inc. v. PROMINENT Supplies, Inc.), and they are not displayed in the same location in reference to the figurative element—PROMINENT Systems, Inc. appears to the right of the figurative element, while PROMINENT Supplies, Inc. appears underneath the figurative element.

Compare Compl. ¶ 40 with Ex. 10 to Compl. At best, the branding/logos show that the two companies are related, but not that they are one in the same.[14]

The Court observes that Defendants' declarations further show that (1) the two companies do not own each other's shares of stock (Supp. Tran Decl. ¶ 4) or consolidate tax returns or financial records (*id*. at ¶ 5); and (2) Mr. Tran has never directed the business or commercial activities of Prominent Supplies (*id*. at ¶ 13).

Considering the totality of the evidence, the few commonalities noted above do not yield the degree of daily, operational control necessary, above and beyond that normally associated with common ownership and directorship, to allow this Court to conclude that Prominent Supplies is the alter ego of Prominent Systems. Accordingly, Plaintiffs may not attribute Prominent Systems' contacts with Pennsylvania to Prominent Supplies, for purposes of establishing this Court's personal jurisdiction over Prominent Supplies.

### (b) *Ky Tran*

In response to Defendants' passing remark in their opening brief—that Ky Tran was "ostensibly protected by the corporate privilege"—Plaintiffs argue that under Third Circuit precedent, Tran would not be protected by the corporate shield doctrine. According to Plaintiffs, under the law of this Circuit, a "corporate officer who actually and substantially participates in the corporation's act of trademark infringement is

---

[14] Plaintiffs contend that just as defendants in *In Re Chocolate Confectionary Antitrust Litigation*, 674 F Supp. 2d 580 (M.D.Pa. 2009), Defendants here used the same branding. However, Plaintiffs' reliance on *Chocolate Confectionary* is misplaced. While the district court in that case listed common branding/uniform logos as one indicia of alter ego status, it did not find that common branding established alter ego jurisdiction. 674 F. Supp. 2d at 599-602.

personally liable under section 43(a), even though he acted as an agent of the corporation rather than on his own behalf." *Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992)(citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)). However, Plaintiffs' reliance on this jurisprudence is misplaced, as the corporate shield doctrine speaks to the individual liability of a corporate officer, not personal jurisdiction.

Rather, this Court has previously set forth the guiding jurisprudence regarding whether personal jurisdiction can be exercised over a corporate officer for acts performed in such capacity in *Farkas v. Rich Coast Corp.*, No. 2:13-cv-926, 2014 WL 550594, at *18 (W.D.Pa. Feb. 11, 2014), as follows:

> Initially, the district court in *Donner* [*v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229 (E.D.Pa. 1979] acknowledged the general rule that "the courts have declined to exercise personal jurisdiction over individuals for their acts done in a corporate capacity." *Id.* at 1233 (citations omitted). In *Donner,* the plaintiff brought a claim for copyright infringement and alleged that the president of the corporate defendant had personally committed tortious acts constituting the alleged infringement. Because the copyright infringement claims were predominantly tortious in nature, the *Donner* court applied the Third Circuit rule of joint tortfeasor liability of corporate officers,[15] and concluded that because the "allegedly tortious acts and omissions of the corporate [defendant] are alleged to have been committed personally by [the corporate officer], acting in his corporate capacity", . . . if [the corporate defendant] is ultimately found liable for copyright infringement, . . . [the corporate

---

[15] "The Third Circuit has held that corporate officers are personally liable for alleged tortious conduct of the corporation if they personally took part in the commission of the tort, or if they specifically directed other officers, agents or employees of the corporation to commit the act." *Donner,* 480 F.Supp. at 1233 (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967)).

officer] will . . . be subject to personal liability as a joint torfeasor." *Id.* at 1233-34. The district court then concluded that the [corporate officer's] allegedly tortious conduct in his capacity as president of [the corporate defendant] may be considered to determine whether the court has jurisdiction over him as an individual defendant. *Id.* at 1234.

*Donner* has been rejected by a number of other district courts in this Circuit, questioning whether that approach withstands constitutional muster on the premise that it may be "fundamentally unfair to force corporate officers to defend suits in their individual capacity based on their participation in corporate activities in a forum." *See, e.g., Rittenhouse & Lee v. Dollars & Sense, Inc.,* No. 83-5996, 1987 WL 9665, *4 (E.D.Pa. Apr. 15, 1987) (citing *Simpkins Corp. v. Gourmet Res. Int'l,* 601 F.Supp. 1336, 1343-45 (E.D.Pa. 1985); *PSC Prof'l Serv. Group., Inc. v. Am. Digital Sys.,* 555 F.Supp. 788, 792-94 (E.D.Pa. 1983)). *See also United States v. Geri-Care, Inc.,* Civ. A. No. 89-5720, 1990 WL 39301, *3 (E.D.Pa. Mar. 30, 1990) (discussing approaches by various district courts post-*Donner* and rejecting *Donner* in favor of approach adopted by district court in *Rittenhouse & Lee*); *Neyer, Tiseo & Hindo, Ltd. v. Russell,* Civ. A. No. 92-2983, 1993 WL 52552, *4-*5 (E.D.Pa. Feb. 25, 1993) (also rejecting *Donner* approach and applying approach delineated in *Rittenhouse & Lee*).

In *Rittenhouse & Lee,* the court followed the approach taken by Judge VanArtsdalen in *Moran v. Metro. Dist. council of Phila. & Vicinity,* 640 F.Supp. 430 (E.D.Pa. 1986), who, after reviewing the conflicting approaches, declined to apply a hard and fast rule and concluded that "consideration of an individual's corporate contacts for jurisdictional purposes may be appropriate under certain circumstances." *Rittenhouse & Lee,* 1987 WL 9665 at *4 (footnote omitted). Although Judge VanArtsdalen in *Moran* did not list any specific circumstances that should be considered, the district court in *Rittenhouse & Lee* identified three circumstances that it found to be relevant in determining whether personal jurisdiction can be exercised over a corporate officer for acts performed in such capacity: (1) "the extent and nature of a corporate officer's personal participation in the tortious conduct;" (2) "the nature and quality of the officer's forum contacts; and" (3) "the officer's role in the corporate

structure." 1987 WL 9665, at *4 n. 6. This flexible due process inquiry, the *Rittenhouse & Lee* court noted, comports with the Supreme Court's decision in *Keeton,* where the Court held that jurisdiction over an employee does not automatically follow merely from the fact that personal jurisdiction exists over the corporation, but rather, "[e]ach defendant's contacts with the forum . . . must be assessed individually." 465 U.S. at 781 n. 13 (citations omitted). Nonetheless, the Supreme Court "reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Id.*

When the three factors identified in *Rittenhouse & Lee* are applied here, the Court concludes that Ky Tran's position as the president of Prominent Systems does not provide a basis for exercising personal jurisdiction over him.

Plaintiffs rely on "information and belief" and conjecture to argue that Mr. Tran directs all business and commercial activities of Prominent Systems and Prominent Supplies. For example, Plaintiffs contend that "[o]n information and belief, Mr. Tran has authorized, directed, helped orchestrate, or participated in the infringement of [its] PROMINENT marks, knowing that the infringement would cause harm on their true owner, Prominent, which he knew and knows is located in Pennsylvania." (Pls.' Br. in Opp'n at 8 (citing Compl., ¶ 19.) Plaintiffs cannot rely on allegations in their Complaint to defeat a motion to dismiss for lack of personal jurisdiction, where Defendants have submitted declarations and other evidence in support of their motion. *Metcalfe,* 566 F.3d at 330. Moreover, in his declaration, Mr. Tran states that (1) prior to this lawsuit, he had no knowledge that one or more of the Plaintiffs had its national headquarters in Pennsylvania (Supp. Tran Decl. ¶ 28); (2) he has never directed the business and

commercial activities of Prominent Supplies (*id.* at ¶ 13); (3) he directs some but not all of the business and commercial activities of Prominent Systems, as he is not the sole officer of that corporation (*id.* at ¶ 12); (4) he has never engaged in any bidding activity in Pennsylvania in his personal capacity (*id.* at ¶ 16); (5) he has never attended a trade show in Pennsylvania (*id.* at ¶ 19); and (6) he has absolutely no knowledge that any consumer in Pennsylvania has ever made a purchase from Prominent Systems in error, believing that such a purchase was being made from Plaintiffs (*id.* at ¶23).

Plaintiffs also rely on Mr. Tran's statement that Prominent Systems employs only 22 people to conjecture that "[i]t is inconceivable that Mr. Tran as the president of an organization of this size would not have actually and substantially participate[d] in all of the corporation's acts, including the willful and deliberate infringement of [its] valuable PROMINENT marks. At the very least the president of such an organization would have directed and authorized the trademark infringing activities." Pls.' Br. in Opp'n at 8. Plaintiffs' suppositions, which are not supported by any evidence, fall short of their prima facie burden in opposing dismissal for lack of personal jurisdiction.

Finally, Plaintiffs contend that Mr. Tran is the "string puller behind all four regional Prominent Systems entities including Prominent Systems' 'Central and Eastern Division'[.]" *Id.* at 8-9 (citing Liedtke Decl. ¶¶ 3-4). However, Mr. Liedtke's declaration actually states that Defendants operate through a "Western Division," a "Central and Eastern Division" as well as their headquarters, as confirmed by documentation from the various states where the divisions are located (*see* Exs. 5 & 6 attached to Complaint), Moreover, Mr. Liedtke's statement that Ky Tran is the "key individual behind all of

these entities and holds the key officer and director positions for all of these entities" (Liedtke Decl. ¶ 6), is much ado about nothing. These divisions are not separate companies, but divisions of the same company—Prominent Systems. Indeed, the corporate name on the registrations is Prominent Systems, Inc. The evidence of record belies the over importance Plaintiffs seek to attach to the individual state registrations listing Mr. Tran as the agent/officer of Prominent Systems.

Clearly, Plaintiffs have failed to provide any evidence of the nature and extent of Mr. Tran's personal participation in the alleged tortious conduct, or of the nature and quality of his forum contacts (and Mr. Tran's declarations belie any such contact). As to Mr. Tran's role in the corporate structure, there is evidence that he directs some of Prominent Systems' business and commercial operations, but this evidence falls short of the mark in establishing that he personally participated in the alleged tortious activity. As such, the Court concludes that when it considers Mr. Tran's corporate contacts, they are insufficient to constitutionally exercise personal jurisdiction over him for acts performed in such capacity.

Moreover, given the lack of evidence to show any contacts with Pennsylvania by Mr. Tran in an individual capacity, Plaintiffs have failed to show sufficient minimum contacts with Pennsylvania to establish personal jurisdiction over him in this District.

### (c)  Second & Third Prongs of *D'Jamoos*

Turning to the second prong of *D'Jamoos*, the Court concludes that because the activities identified by Plaintiffs do not constitute purposefully directed contacts with Pennsylvania, it is of no moment then whether the litigation arose out of or relates to

one of the activities relied on by Plaintiffs to establish specific personal jurisdiction.

Likewise, having failed to establish the first prong of the *D'Jamoos* test, Plaintiffs have not caused the burden to shift to Defendants to prove the third prong of *D'Jamoos*—that their contacts with Pennsylvania are such that maintenance of the action "offend[s] traditional notions of fair play and substantial justice."

## 2. The Calder Effects Test

Alternatively, Plaintiffs argue that specific personal jurisdiction exists over Defendants under the *Calder* effects test,[16] but fail to delineate the elements of that test or provide any analysis of the application of those elements to the alleged contacts here.

The U.S. Court of Appeals for the Third Circuit has determined that a plaintiff may establish personal jurisdiction under *Calder* if he or she demonstrates:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;

---

[16] In *Calder v. Jones*, 465 U.S. 83 (1984), the Supreme Court was asked to decide whether a California district court had specific jurisdiction over defendants, who were Florida residents, over a claim brought by an entertainer, who was a California resident, because of an article published by the National Inquirer, based on the effects of their Florida actions felt by the plaintiff in California. The Court found that the Florida defendants expressly aimed their intentional, tortious activity at California because "they knew [the article] would have a potentially devastating impact upon [the California plaintiff]. And they knew that the brunt of that injury would be felt by [the California plaintiff] in the State in which she lives and works and in which the National Inquirer has its largest circulation." *Id.* at 789-90. As such, the Supreme Court concluded that the Florida defendants could "reasonably anticipate being haled into court" in California. *Id.* at 790 (citing *World-Wide Volkswagen*, 444 U.S. at 297) (other citations omitted).

(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten,* 499 F.3d at 297 (quoting *IMO Indus.,* 155 F.3d at 265–66) (internal quotation marks omitted). The *Marten* court further explained:

> [T]he effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state. *See, e.g., Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 455 n. 6 (3d Cir.2003) (indicating the effects test is an alternative to "minimum contacts" analysis but declaring they both require a similar type of "intentionality" on the part of the defendant). Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state. "[T]he foreseeability that is critical to due process analysis is ... that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

*Id.* In applying the *Calder* effects test, the court of appeals has instructed that a district need not consider the first two elements unless the "expressly aimed" element is first met. *Id.* (citing *IMO Indus.,* 155 F.3d at 266). To demonstrate that the defendant "expressly aimed" his or her tortious conduct at the forum, the plaintiff must show that

> "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." [*IMO Indus.,* 155 F.3d] at 266. If a plaintiff fails to show that the defendant "'manifest[ed] behavior intentionally targeted at and focused on' the forum," *IMO Indus.,* 155 F.3d at 265 (quoting *ESAB Group Inc. v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir.1997)), the plaintiff fails to establish jurisdiction under the effects test.

*Marten,* 499 F.3d at 298.  Finally, the *Marten* court observed that under *Calder,* "the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants.  Jurisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises."  *Id.* (quoting *Keeton,* 465 U.S. at 780).

As explained above in applying the *D'Jamoos* test, Plaintiffs have failed to establish with reasonable particularity sufficient contacts between Prominent Supplies and Pennsylvania, as well as between Ky Tran and Pennsylvania.  Nor have Plaintiffs pointed to any evidence in the record which shows that Prominent Supplies or Ky Tran expressly aimed their allegedly tortious conduct at Pennsylvania.  Plaintiffs have not identified any Pennsylvania customers who bought Defendants' products thinking that they were buying Plaintiffs' products.  The fact that Plaintiffs' United States headquarters is located in this District is insufficient by itself to meet the "expressly aimed" criteria of *Calder*.  *Marten*, 499 F.3d at 298.  Therefore, Plaintiffs have failed to meet their burden of establishing sufficient minimum contacts under the *Calder* effects test.

**(c)      Tort Out/Harm In Test Under 42 PA. CONS. STAT. §5322**

Plaintiffs further argue that this Court should exercise personal jurisdiction over Prominent Supplies and Ky Tran based on the tort out/harm in test under Pennsylvania law.  The Pennsylvania long-arm statute extends jurisdiction to any person who "causes harm or tortious injury in the Commonwealth by an act or omission outside the

Commonwealth." 42 PA. CONS. STAT. ANN. §5322(a)(4). This provision is commonly referred to as the "tort out/harm in" provision.[17]

In this case, Plaintiffs contend that they suffered injury in Pennsylvania, although Defendants' alleged tortious conduct occurred outside of Pennsylvania. The record does not appear to support Plaintiffs' contention as to Prominent Supplies and Ky Tran, as it is devoid of any evidence showing that Plaintiffs suffered any harm as a result of the actions of Prominent Supplies or Ky Tran. Moreover, this Court found above that the actions of Prominent Systems could not be attributed to either of these Defendants in order to establish personal jurisdiction.

Nonetheless, even assuming that personal jurisdiction could somehow be maintained over Prominent Supplies and Ky Tran under Pennsylvania's long-arm statute, that does not end the inquiry because the court "cannot presume that jurisdiction is proper simply because the requirements of a long—arm statute have been met. . . . [The court] must still determine whether the strictures of constitutional due process (i.e., minimum contacts and notions of 'fair play and substantial justice') would be observed by asserting jurisdiction." Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 202 (3d Cir. 1996) (footnote omitted). Therefore, Plaintiffs must also show that

_____

[17] Although the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, as it involves federal claims under the Lanham Act for trademark infringement and dilution of trademarks, it appears that the courts still turn to the forum state's long-arm statute in determining whether personal jurisdiction exists over a non-resident defendant. See, e.g., Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp. 2d 578 (E.D.Pa. 2005) (trademark infringement, false designation of origin under Lanham Act).

Defendants have sufficient minimum contacts with Pennsylvania, and if they meet this burden, then Defendants must show that the exercise of such personal jurisdiction would offend the notions of fair play and substantial justice.

As discussed above, Plaintiffs have not shown that any alleged tortious acts by Prominent Supplies or Ky Tran in California were deliberately directed towards Pennsylvania and Prominent Fluid Controls, a Pennsylvania corporation. Nor have Plaintiffs identified one Pennsylvania customer that was confused by Prominent Supplies' alleged use of Plaintiffs' trademark. "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]" *Burger King,* 471 U.S. at 472 (internal citations omitted). As Plaintiffs have failed to establish that Prominent Supplies and Ky Tran had sufficient minimum contacts with Pennsylvania, personal jurisdiction does not exist over these Defendants under the tort out/harm in provision.

In summary, Plaintiffs have failed to show, under any theory, that Prominent Supplies and Ky Tran purposefully directed their activities toward Pennsylvania. Accordingly, the Court finds that it lacks personal jurisdiction over Prominent Supplies and Ky Tran. Therefore, the Court will grant Defendants' motion to dismiss under Rule 12(b)(2) as to Defendants Prominent Supplies and Ky Tran and dismiss the claims against them without prejudice.

## C. MOTION TO DISMISS FOR IMPROPER VENUE

Defendants have also moved to dismiss this action on the basis that venue in the Western District of Pennsylvania is improper under the general venue statute, 28 U.S.C. §1391(b). Defendants' motion to dismiss for improper venue appears to be based on the residence of "all defendants," i.e., either parts (1) or (3) of §1391(b), as Defendants submit that "Plaintiffs cannot rely on the residence of one defendant to bring suit against multiple defendants in this district, where one but not all of them reside." Defs.' Br. at 14. [18] As such, Defendants contend that "a [Rule] 12(b)(3) motion to dismiss by less than all defendants cannot be granted." *Id.* at 13. As such, Defendants submit that the court has the power to transfer the case under 28 U.S.C. §1406(a), provided the action is otherwise transferable. *Id.*

The remainder of Defendants' argument centers on identifying a proper venue for this action. Defendants submit venue is proper in the Central District of California under all three categories of Section 1391(b), and inform the Court that Prominent Supplies and Ky Tran wish to avail themselves of their personal venue rights in seeking to have this action transferred to the Central District of California.

In response, Plaintiffs argue that other than stating the requirements for venue under Section 1391, Defendants' brief "is utterly devoid of any analysis or application of the controlling statute whatsoever as applied to Plaintiffs' choice of venue." Pls.' Br. in

---

[18] Defendants do not elaborate as to their basis for determining which Defendants are residents for venue purposes. Based on §1391(c) and the supporting documents attached to the parties briefs, in particular, Defendants' concession that Prominent Systems "is likely subject to specific personal jurisdiction in this forum under the applicable Third Circuit standards" (Defs.' Reply Br. at 8), it appears that only Prominent Systems would be deemed a resident of the forum.

Opp'n at 27. Plaintiffs maintain that venue is proper in this District as to all Defendants based on § 1391(b)(2)—as a substantial part of the events or omissions giving rise to their federal and state trademark infringement claims occurred in the Western District of Pennsylvania. Defendants have not addressed this argument in their reply brief. Thus, Plaintiffs contend that Defendants have failed to meet their burden of proving improper venue.

The Court agrees that venue is proper in this District as to the remaining Defendant, Prominent Systems. However, as this Court lacks personal jurisdiction over Defendants Prominent Supplies and Ky Tran, Defendants' motion to dismiss under Rule 12(b)(3) will be denied as moot as to these Defendants.[19]

Under the general venue statute, venue will lie over a civil action where one of the following circumstances is shown to exist:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

---

[19] However, it appears, based on the record before the Court, that venue is improper as to Prominent Supplies and Ky Tran in this District. Defendants argue, and the Court has found, that Plaintiffs have failed to separately allege facts in their Complaint or produce any documents showing the particular acts or conduct of Prominent Supplies and Ky Tran directed to Pennsylvania which give rise to the alleged trademark infringement and state law claims. Thus, the record fails to show that *any* part of the actions of Prominent Supplies and Ky Tran, allegedly giving rise to trademark infringement, occurred in this District, let alone a *substantial* part. As such, venue is improper as to Prominent Supplies and Ky Tran under S1391(b)(2).

28 U.S.C. § 1391(b). In making a determination as to whether venue is proper under §1391(b)(2), "[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'[.]" *Cottman Transm'n Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Bockman v. First Am. Marketing Corp.,* 459 F. App'x 157, 161 (3d Cir. 2012) (quoting *Cottman, id.*). "The requirement of '[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.'" *Bockman,* 459 F. App'x at 161 (quoting *Cottman*, 36 F.3d at 294). "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *Cottman*, 36 F.3d at 294. The court of appeals in *Cottman* further explained that "[i]n assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." 36 F.3d at 295.

Like the instant matter, *Cottman* involved claims of trademark infringement. The court of appeals held that the "focus of [its] venue inquiry in a Lanham Act trademark infringement case is the location where the unauthorized passing off takes place—whether that occurs solely within one district or many. " *Id.* (citing *Tefal, S.A. v. Products Int'l Co.,* 529 F.2d 495, 49697 (3d Cir.1976)) (other citation omitted). Thus, the Court will briefly examine whether the events or omissions allegedly giving rise to Prominent Systems' alleged unauthorized trademark infringement/passing off in Pennsylvania are likely substantial.

To this end, Plaintiffs submit that they have alleged a likelihood of confusion, including initial interest confusion, and that Prominent Systems uses the PennBid

System to procure contracts with government agencies as well as private organizations in Pennsylvania (Compl., ¶¶ 11, 17); and that Prominent Systems' interactive website reaches this District, as does their targeted advertising through Water Quality Products magazine. Pls.' Br. in Opp'n at 28. Plaintiffs also contend that the harm from Prominent Systems' alleged tortious conduct was felt here based on the fact that their U.S. operation is headquartered in the Western District of Pennsylvania. Giving Plaintiffs the benefit of all favorable inferences, as it must, the Court finds that the Complaint and other documents allege sufficient facts from which it can reasonably be inferred that Plaintiffs may be able to show after discovery that a substantial part of the events or actions giving rise to their trademark infringement claims occurred in this District.

In any event, Defendants do not appear to be contesting that venue is proper in this District vis a vis Prominent Systems, but rather, are arguing that the case be transferred in its entirety to the Central District of California—a more convenient forum. Therefore, the Court finds that venue is proper in this District as to Prominent Systems.

For the reasons set forth above, the Court will deny Defendants' motion to dismiss for improper venue under Rule 12(b)(3) as to Defendant Prominent Systems, and will deny that motion as moot as Defendants Prominent Supplies and Ky Tran.

### D. MOTION TO TRANSFER

Defendants have also filed a motion to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404 for *forum non conveniens* and/or 28 U.S.C. §

1406(a) for lack of personal jurisdiction, and/or 28 U.S.C. § 1631 in the interests of justice, which Plaintiffs have opposed. While venue is proper in this District with regard to the claims against Prominent Systems, because personal jurisdiction is lacking and venue is improper as to Prominent Supplies or Ky Tran, Plaintiffs can only proceed against all three Defendants if this case is transferred to the Central District of California. Accordingly, the Court will evaluate Defendants' motion to transfer under 28 U.S.C. § 1406(a).[20]

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Courts have allowed a transfer under Section 1406(a), in the interest of justice, when suit is filed in a district in which venue is improper or personal jurisdiction is lacking, or both. *Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985); *Porter v. Groat*, 840 F.2d 255, 257-58 (4th Cir. 1988) *See also Goldlawr, Inc. v. Heiman*, 369

---

[20] A transfer under 28 U.S.C. § 1404(a) governs cases in which the forum court has proper venue—it provides simply that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In considering a motion to transfer venue under §1404(a), the court applies a two-part inquiry. *Mitel Networks Corp. v. Facebook, Inc.*, 943 F.Supp. 2d 463, 467 (D.Del. 2013). First, the court must determine whether the action could have been brought originally in the transferee forum, that is, whether venue in the transferee district is proper. *Id.*; *Stillwagon*, 2013 WL 1180312, at *24 (citations omitted). Second, the court must apply the balancing test set forth in *Jumara*, 55 F.3d at 879-80, which requires the weighing of a number of public and private interests to determine whether the transferee forum "would best serve the convenience of the parties and witnesses as well as the interests of justice." *Mitel Networks*, 943 F.Supp. 2d at 467 (citing *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F.Supp. 2d 718, 723-24 (D.Del. 2012)).

U.S. 463, 466 (1962) (finding §1406(a) permits a district court to transfer as case in which it lacked personal jurisdiction over two of the defendants and venue was improper, to a forum where venue was proper and personal jurisdiction could be obtained over defendants). As noted by the district court in *LoPiccolo v. American University*: "The decision whether to transfer under § 1406(a) is in the sound discretion of the district court, *Lafferty v. Gito St. Riel*, 495 F.3d 72, 75 n. 3 (3d Cir.2007), and does not require the same consideration of factors as transfer under § 1404(a) for forum non conveniens. *See Rojas* [*v. Trans States Airlines, Inc.*,] 204 F.R.D. [265,] 269 [(D.N.J. 2001)]. The transferring court in a § 1406(a) analysis 'must simply determine a venue in which the action originally could have been brought that serves the interest of justice.' *Id*." *LoPiccolo v. Am. Univ.*, Civ. A. No. 10-cv-3131, 2011 WL 1196900, at *3 (E.D.Pa. Mar. 31, 2011).

Similarly, 28 U.S.C. §1631, which was enacted as part of the Federal Courts Improvement Act of 1982, provides that whenever a "court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action could have been brought at the time it was filed." The Third Circuit has indicated that this statute, too, may be an appropriate authority for transfer where the Court lacks personal jurisdiction. *See generally Chicosky v. Presbyterian Med. Ctr.*, 979 F.Supp. 316, 320 n. 3 (D.N.J. 1997) (discussing, at length, Third Circuit and other case authority for transfer absent personal jurisdiction under §§ 1404, 1406 or 1631); *id.* at 322, n. 5 (observing that "the weight of authority among courts in this circuit is that section 1631 does allow transfers where personal jurisdiction is lacking").

Where, as in the present case, venue is proper for some defendants but improper for others, the district court is vested with wide discretion in ruling on a motion to transfer under §1406(a). *See* Charles Alan Wright and Arthur Miller, et al., 14D FED. PRAC. & PROC. JURIS. §3827, at 559-60 (4th ed. 2013) ("Wright & Miller"). The court may (1) "transfer the entire case to another forum that would be proper for all defendants[;]" (2) "retain the case as to those defendants who have been properly sued there and sever and transfer the portion of the case for those defendants for whom venue is improper[;]" (3) "or dismiss the action as to those defendants." *Id.* (footnotes omitted). *See also Cottman Transm'n Sys., Inc. v. Martino,* 36 F.3d 291, 296 (3d Cir. 1994) (citing Wright & Miller § 3827 (3d ed.), *supra*) (other citation omitted). In considering whether the interests of justice require transfer rather than dismissal, the courts have considered several factors, such as whether: (1) dismissal would result in a procedural bar to filing a new law suit (i.e., statute of limitations issue); (2) transfer would be more economical or efficient; (3) the parties were represented by experienced litigators; and (4) the defendant has mislead plaintiff on the facts relevant to venue. *See, e.g., TJF Assocs., LLC v. Kenneth J. Rotman & Allianex, LLC,* No. Civ. A. 05-705, 2005 WL 1458753, at *8 (E.D.Pa. June 17, 2005) ("transfer in lieu of dismissal is appropriate when dismissal will penalize the plaintiff by subjecting it to 'justice-defeating technicalities,' such as the impending expiry of a statues of limitations.") (citing *Goldlawr,* 369 U.S. at 467) (other citation omitted); *Athletes Foot of Del., Inc. v. Ralph Libonati Co., Inc.,* 445 F. Supp. 35, 49 (D.Del. 1977) (transfer appropriate where defendants deliberately misled plaintiffs about venue, or where "plaintiffs in good faith or through excusable neglect, inadvertence, or mistake

were led to believe that venue was proper in this district[.]") (citations omitted). "Dismissal is appropriate . . . when there is no threat of a procedural bar to plaintiff's cause of action, when the parties are commercially sophisticated and familiar with the forms of litigation, and when there was nothing obscure about the location of the proper forum for the case." *TJF Assocs., LLC,* 2005 WL 1458753, at *8 (citing *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir.2003)).

On March 27, 2017, the Court held a telephone conference with the parties to discuss the Court's options with regard to Defendants' motion to transfer, in light of its conclusion that personal jurisdiction does not exist over Prominent Supplies and Ky Tran based on the record before it.  Counsel for Plaintiffs, Christian Liedtke, informed the Court that while it believed that personal jurisdiction existed over all three Defendants, if the Court was inclined to find jurisdiction lacking as to Prominent Supplies and Ky Tran, Plaintiffs preferred to proceed with their case against Prominent Systems in this District and that the case against Prominent Supplies and Ky Tran be dismissed without prejudice, rather than severed and transferred to California.  Mr. Liedtke further represented that given the Court's intended ruling, it was likely that his client would not file a lawsuit in California against the dismissed Defendants at this time, but would wait until this case was concluded to make that decision.  Mr. Liedtke further indicated that he did not wish to pursue jurisdictional discovery at this point. He also mentioned that he has over 20 years of experience in litigating trademark infringement cases.

At that same conference, counsel for Defendants, Alan Romero, indicated that his

preference was that the entire case be transferred to the Central District of California. He believes that the claims should be tried together in one court because it was Defendants' position that there is one trademark, and a question of fact exists as to whether the term Prominent is generic or not.

After considering the parties arguments in their briefs and at the conference, the Court finds that the interests of justice do not mandate that the claims against Prominent Supplies and Ky Tran be severed and transferred, or that the entire case be transferred, to the Central District of California. Rather, the Court will dismiss the claims against Prominent Supplies and Ky Tran without prejudice, and retain the claims against Prominent Systems. It does not appear that either Plaintiffs or Defendants will be prejudiced by this ruling. Plaintiffs chose this District as their forum; Defendant Prominent Systems has conceded that personal jurisdiction exists over it in this District, and by doing so, purposefully availed itself of the privileges of conducting business in this District.[21] Thus, Prominent Systems cannot feign prejudice or surprise at having to defend itself here. Because of the ongoing nature of the alleged trademark violations, the statute of limitations will not be impacted if Plaintiffs choose to pursue their claims against the dismissed defendants at a later date. In addition, because there will not be concurrent litigation in two districts, the probability of dual or inconsistent judgments is unlikely. Indeed, there may not be a need for additional litigation in California once this case has been resolved. Moreover, Plaintiffs prefer to forego any jurisdictional

---

[21] There is nothing unfair in requiring a defendant corporation who came to Pennsylvania and conducted business to stand suit in Pennsylvania. *Lighting Sys., Inc. v. Int'l Merchandising Assocs., Inc.*, 464 F. Supp. 601, 604 (W.D.Pa. 1979).

discovery in order to expedite resolution of their claims against Prominent Systems in this District. Therefore, the Court does not find that severance and transfer or transfer of the entire case would be a more efficient or economical resolution.

For these reasons, the Court finds that the interests of justice do not mandate severance and transfer of the claims against Prominent Supplies and Ky Tran, or transfer of the entire case. Accordingly, the Court will deny Defendants' motion to transfer.

## III. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part Defendants' motion to dismiss for lack of personal jurisdiction. Defendants' motion to dismiss under Rule 12(b)2) will be granted as to Defendants Prominent Supplies, Inc. and Ky Tran, and will be denied as to Defendant Prominent Systems, Inc. The claims against Defendants Prominent Supplies and Ky Tran will be dismissed without prejudice. In addition, the Court will deny Defendants' motion to dismiss under Rule 12(b)(3) for improper venue as to Defendant Prominent Systems, and will deny said motion as moot with regard to Defendants Prominent Supplies and Ky Tran. Finally, the Court will deny Defendants' motion to transfer.

An appropriate order will follow.

Dated: April 10, 2017                    BY THE COURT:

_____

LISA PUPO LENIHAN
United States Magistrate Judge

cc: All Counsel of Record
*Via Electronic Mail*